UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

CHARLES LEHNERT, JENNIFER MUSARRA
and CELINE D'AMORE,                                          :

                                                 :   Civil Action No.

           Plaintiffs, on behalf of themselves   :
           and all others similarly situated,   :

          -against-                                          :   **CLASS ACTION COMPLAINT**

                                                 :

TOWN SPORTS INTERNATIONAL, LLC and            :
TOWN SPORTS INTERNATIONAL HOLDINGS,        :
INC. d/b/a NEW YORK SPORTS CLUBS,                    :   **Jury Trial Demanded**
BOSTON SPORTS CLUBS, WASHINGTON              :
SPORTS CLUBS and PHILADELPHIA SPORTS        :
CLUBS,                                                                        :

                Defendants.                                 :

---------------------------------------------------------------- X

       Plaintiffs Charles Lehnert, Jennifer Musarra and Celine D'Amore, on behalf of

themselves and the Class (as defined below), allege as follows:

## PRELIMINARY STATEMENT

       1.      Defendant Town Sports International, LLC ("TSI") – the owner of the New York

Sports Clubs gym brand – engages in a fraudulent practice of charging membership fees even

after members have given notice of cancellation.  Incredibly, TSI was already investigated by the

Washington D.C. Attorney General's Office of Consumer Protection for *these exact same*

*unlawful practices*.  On November 21, 2017, Attorney General Karl A. Racine announced a

settlement of these consumer fraud claims, stating:

> **Consumers should not be on the hook when companies mislead**
> **them with unclear and inconsistent cancellation policies.**
> **Washington Sports Club members who made a good-faith**
> **effort to end their membership deserve the restitution that this**
> **settlement provides.[1]**

---

[1]    Available at: https://oag.dc.gov/release/attorney-general-obtains-settlement-washington

According to the Washington D.C. Attorney General's Office,

> **As part of its investigation, OAG [Office of the Attorney General] discovered that consumers who joined a Washington Sports Club were required to enter into membership agreements that contained year-long terms. Although the membership agreements stated that consumers must cancel in writing and give 30 days' notice, club employees routinely told consumers that they could cancel at any time by informing a desk employee or manager at the club. The company then continued to charge consumers who canceled in this manner.**

Despite being forced to pay substantial fines and penalties in Washington D.C., it appears to still be "business as usual" at TSI.  This practice simply must come to an end.

2.      Plaintiffs bring this action seeking declaratory, injunctive and monetary relief, on behalf of themselves and the Class, due to TSI's unlawful conduct in violation of New York General Business Law ("GBL") §349; D.C. Consumer Protection Procedures Act §28-3901, *et seq*. ("DCCPPA"); Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73 §201-1, *et seq*. ("PUTPCPL"); Connecticut Unfair Trade Practices Act, §42-110, *et seq*. ("CUTPA"); Maryland Consumer Protection Act, §13-101, *et seq*. ("MCPA"); New Jersey Consumer Fraud Act, §56:8-1, *et seq*. ("NJCFA"); Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq*. ("RIUTPCPA"); and Virginia Consumer Protection Act of 1977, §59.1-196, *et seq*. ("VCPA") (the, "Consumer Fraud and Protection Statutes"); and/or for engaging in conversion.

## JURISDICTION AND VENUE

3.      The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of residence of the named parties.  The Court also has diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the

proposed Class has more than 100 members, contains at least one member of diverse citizenship from Defendants and the amount in controversy exceeds $5 million.

4.      The Court has personal jurisdiction over Defendants because Defendants are authorized to, and do, conduct business in New York and in this District.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

6.      Plaintiff Charles Lehnert is an adult resident of Hudson County, New Jersey.  Mr. Lehnert became a member of New York Sports Clubs on or about April 30, 2017.

7.      Jennifer Musarra is an adult resident of Queens County, New York.  Ms. Musarra became a member of New York Sports Clubs in or around January 2017.

8.      Celine D'Amore is an adult resident of New York County, New York.  Ms. D'Amore became a member of New York Sports Club on or about March 28, 2016.

9.      Defendant Town Sports International, LLC, d/b/a New York Sports Clubs, is a domestic limited liability company with its primary business being the running and operating of gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs, and which has a principal place of business located at 5 Penn Plaza, 4th Floor, New York, New York 10001.

10.      Defendant Town Sports International Holdings, Inc., d/b/a New York Sports Clubs, is a foreign corporation incorporated in Delaware with its primary business being the running and operating of gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs, and which has a principal place of business located at 1001 US North Highway 1, Suite 201, Juniper, Florida 33477.

3

**FACTS**

**Factual Allegations**

11.     Town Sports International, LLC is one of the largest owners/operators of fitness clubs in the country, with approximately 544,000 current members and approximately 150 gyms located in New York, Massachusetts, Washington D.C., Pennsylvania, Connecticut, Maryland, New Jersey, Rhode Island and Virginia.[2]

12.     Among other properties and brands, TSI owns and operates approximately 102 gyms under the brand "New York Sports Club" ("NYSC"), 30 gyms under the brand "Boston Sports Club" ("BSC"), 10 gyms under the brand "Washington Sports Club" ("WSC") and five gyms under the brand "Philadelphia Sports Club" ("PSC").[3]  Certain of these gym locations are in the neighboring states of Connecticut, Maryland, New Jersey, Rhode Island and Virginia.

13.     TSI requires most consumers to become a TSI gym member ("TSI Gym Member") in order to gain access to use its gym locations.

14.     In order to obtain a TSI gym membership, customers enter into agreements with TSI where they agree to pay a sum of money in exchange for access to one or more TSI gym locations.

15.     However, it appears TSI does not present potential TSI Gym Members with written contracts to sign in order to become a TSI Gym Member, or at least only does so very rarely or in atypical situations.

---

[2]     Information based on TSI's most recent Securities and Exchange Commission Form 10-K, filed February 22, 2017.  Available here: http://www.annualreports.com/HostedData/AnnualReports/PDF/NASDAQ_CLUB_2016.pdf.

[3]     Information based on offerings available at www.newyorksportsclubs.com/clubs.  Not all gyms are located in the city or state represented by the brand name.  For instance, certain BSC gyms are located outside of Boston or outside of Massachusetts.

16.     As a matter of practice, TSI staff will verbally present to potential customers the monthly rate for the type of gym access the customer is interested in purchasing.

17.     Then, potential customers become TSI Gym Members pursuant to the terms verbally presented to them by either verbally assenting to the terms or by signing an electronic pad presented to them by a TSI staff member (and providing a form of payment, usually a credit or debit card for automatic monthly charges).

18.     Once a customer signs the electronic pad, TSI has in its possession an electronic image of the customer's signature, which is saved to TSI's electronic records database.

19.     TSI will then superimpose a TSI Gym Member's signature on a document containing various terms and conditions for membership at TSI ("Fraudulent Membership Contract") and retain that document internally as a supposedly agreed-upon contract.

20.     TSI unlawfully acts as though the Fraudulent Membership Contracts are legitimate agreements.

21.     However, TSI Gym Members are never informed of the vast majority of these contractual terms, never informed that their signatures will be superimposed onto a contract and never informed that there are any membership terms other than those verbally presented to them.

22.     Upon information and belief, the reason TSI engages in this practice is that the terms of the Fraudulent Membership Contracts are completely unreasonable and the company is concerned that customers would not agree to the terms if actually presented to them, including the term:  "By signing this Agreement, the member grants the Clubs the right to use their photographic likeness for promotional purposes, including, without limitation, for online usage and marketing materials."

23.     Many of TSI's written membership contracts also contain the following or substantially similar language with respect to cancellation of memberships:

> You may cancel your Month-to-Month at any time by (1) giving notice at the club and obtaining a cancellation receipt, or (2) sending a written notification by certified or registered mail to the club at the address set forth above. ***Your cancellation will be effective 45 days after you provide proper notice of cancellation, and you will continue to have the services provided under this agreement and be billed accordingly until the end of the 45 day notice period.***

(emphasis added).

24.     In sum, according to this provision, a TSI Gym Member must pay for an additional 45 days of membership once they inform TSI that they desire to cancel their membership.

25.     Moreover, according to this provision, to cancel a membership, TSI Gym Members must obtain a "cancellation receipt" or send TSI "a written notification by certified or registered mail."

26.     TSI attempts to hold TSI Gym Members who try to cancel their TSI gym memberships to these supposed "policies" or "contract terms" – whether TSI has a Fraudulent Membership Contract on file or not.

27.     Upon information and belief, thousands of TSI Gym Members have canceled and/or attempted to cancel their memberships with TSI within the relevant statutory period.

28.     Upon information and belief, thousands of TSI Gym Members who have canceled and/or attempted to cancel their memberships with TSI never agreed to be bound by any purported policies or terms related to the cancellation of their TSI memberships.

29.     Accordingly, TSI Gym Members never authorized TSI to charge their credit or debit cards for any charges following notice of cancellation.

30.     TSI has charged at least 45 days' worth of membership fees to TSI Gym Members who have canceled their TSI memberships and who never agreed to be subject to any purported policies or terms related to the cancellation of their TSI memberships.

31.     Moreover, upon information and belief, TSI has refused to honor TSI Gym Members' attempts to cancel their memberships either because TSI has taken the position that the TSI Gym Member failed to comply with the technicalities of purported policies or terms related to the cancellation of his or her TSI membership or because TSI has otherwise simply refused to process a TSI Gym Member's request for cancellation.

32.     In those situations, upon information and belief, TSI Gym Members are continually charged membership dues even though the TSI Gym Member attempted to cancel his or her TSI gym membership.

**Plaintiff Charles Lehnert**

33.     Plaintiff Charles Lehnert became a TSI Gym Member in or around April 2017 after agreeing to membership terms with a TSI agent via telephone.

34.     Soon after becoming a TSI Gym Member, a TSI agent required Mr. Lehnert to place his signature on an electronic pad.

35.     Mr. Lehnert was told he could cancel his membership at any time.

36.     TSI never provided Mr. Lehnert with any purported written membership contract.

37.     Mr. Lehnert never agreed nor was he ever notified that he had to pay for an additional 45 days of membership once he canceled his TSI gym membership.

38.     Mr. Lehnert never agreed nor was he ever notified that he had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

39.     Between November 2017 and January 2018, Mr. Lehnert made several unsuccessful attempts to cancel his TSI membership.

40.     On January 12, 2018, Mr. Lehnert sent TSI a letter in another attempt to cancel his membership.

41.     TSI never canceled Mr. Lehnert's TSI gym membership despite his requests.

42.     Since Mr. Lehnert first attempted to cancel his TSI gym membership, TSI has continued to charge Mr. Lehnert's credit card.

43.     Mr. Lehnert never authorized TSI's continued charges.

44.     As a result, Mr. Lehnert was forced to instruct his bank to cease all payments to TSI to avoid any future charges.

**Plaintiff Jennifer Musarra**

45.     Plaintiff Jennifer Musarra became a TSI Gym Member in or around January 2017 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located in Whitestone, New York.

46.     Ms. Musarra was told she could cancel her membership at any time.

47.     TSI never provided Ms. Musarra with any purported written membership contract nor was she ever instructed by a TSI agent to place her signature on an electronic pad.

48.     Ms. Musarra never agreed nor was she ever notified that she had to pay for an additional 45 days of membership once she canceled her TSI gym membership.

49.     Ms. Musarra never agreed nor was she ever notified that she had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

8

50.     In or around November 2017, Ms. Musarra made several attempts to cancel her TSI membership, including by faxing a notice of cancellation to TSI.

51.     Soon after sending the fax, a TSI agent informed Ms. Musarra that her membership would not be canceled until January 2018.

52.     TSI never canceled Ms. Musarra's TSI gym membership.

53.     Since Ms. Musarra first attempted to cancel her TSI gym membership, TSI has continued to charge Ms. Musarra's credit card.

54.     Ms. Musarra never authorized TSI's continued charges.

55.     As a result, Ms. Musarra was forced to instruct her bank to cease all payments to TSI to avoid any future charges.

**Plaintiff Celine D'Amore**

56.     Plaintiff Celine D'Amore became a TSI Gym Member on or about October 1, 2012 after agreeing to membership terms with a TSI agent via telephone.

57.     Ms. D'Amore was told she could cancel her membership at any time.

58.     Ms. D'Amore canceled her membership on March 28, 2016.

59.     That same day, Ms. D'Amore entered a new TSI membership at a different rate. Ms. D'Amore and a TSI agent agreed to the terms of her new membership via telephone and text message.

60.     Ms. D'Amore never signed a TSI written contract nor was she ever instructed by TSI agent to place her signature on an electronic pad.

61.     Upon information and belief, a TSI agent forged Ms. D'Amore's signature onto a TSI membership contract.

62. Ms. D'Amore never agreed nor was she ever notified that she had to pay for an additional 45 days of membership once she canceled her TSI gym membership.

63. Ms. D'Amore never agreed nor was she ever notified that she had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

64. On April 5, 2018, Ms. D'Amore filed a cancellation request form to cancel her TSI membership.

65. TSI never canceled Ms. D'Amore's TSI membership.

66. Since Ms. D'Amore first attempted to cancel her TSI gym membership, TSI has continued to charge Ms. D'Amore's debit card.

67. Ms. D'Amore never authorized TSI's continued charges.

68. As a result, Ms. D'Amore was forced to file a dispute with her credit card company and instruct her bank to cease all payments to TSI to avoid any future charges.

## CLASS ACTION ALLEGATIONS

69. Plaintiffs bring their claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and on behalf of all other similarly situated persons who are or have been charged fees by TSI following notice of the cancellation of their memberships during the applicable statutory limitation periods (the "Class").

70. The claims of the Class are the same as or substantially similar to those of Plaintiffs, and the Class, like Plaintiffs, have been subject to the same unlawful conduct.

71. As a result of Defendants' conduct as alleged herein, Defendants have engaged in violations of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA, NJCFA, RIUTPCPA and VCPA, as well as conversion.

72.     Defendants' violations of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA,

NJCFA, RIUTPCPA and VCPA, as well as their conversion have been willful, repeated,

knowing, intentional and without a good faith basis, and have significantly damaged Plaintiffs

and the Class.

73.     As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the

Class for the full amount of any economic and monetary loss suffered by Plaintiffs and the Class,

and any and all other actual, statutory or other applicable damages.

74.     Certification of the Class's claims as a class action is the most efficient and

economical means of resolving the questions of law and fact common to Plaintiffs' claims and

the claims of the Class.

75.     Plaintiffs have standing to seek such relief because of the adverse effect that

Defendants' unlawful conduct has had on them individually and on members of the Class.

76.     Without class certification, the same evidence and issues would be subject to re-

litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications

and conflicting obligations.

77.     Certification of the Class is the most efficient and judicious means of presenting

the evidence and arguments necessary to resolve such questions for Plaintiffs, the Class and

Defendants.

78.     Plaintiffs' claims raise questions of law and fact common to the Class.  Among

these questions are:

- Whether Plaintiffs and the Class agreed to be bound by any purported policies or contract terms regarding the cancellation of their memberships with Defendants;

- Whether Defendants' agent(s) provided Plaintiffs and the Class with a physical or electronic copy of Defendants' written membership agreements prior to signing up Plaintiffs and the Class as TSI Gym Members;

- Whether Defendants engaged in conversion by charging additional fees to Plaintiffs and the Class related to the cancellation of their memberships;

- Whether Defendants engaged in deceptive and/or misleading consumer conduct towards Plaintiffs and the Class; and

- Whether Defendants' unlawful conduct towards Plaintiffs and the Class constitutes a violation of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA, NJCFA, RIUTPCPA and VCPA.

79.     These common questions of law and fact arise from the same course of events, and each Class member will make similar legal and factual arguments to prove liability.

80.     Plaintiffs are members of the Class that they seek to represent.

81.     Plaintiffs' claims are typical of the claims of the Class.

82.     The relief Plaintiffs seek for the unlawful conduct complained of herein is also typical of the relief sought on behalf of the Class.

83.     Plaintiffs' interests are co-extensive with those of the Class that they seek to represent.

84.     Plaintiffs are willing and able to represent the Class fairly and to vigorously pursue their similar individual claims in this action.

85.     Plaintiffs have retained counsel who are qualified and experienced in class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

86.     Defendants have acted or refused to act on grounds generally applicable to the Class, making final injunctive and declaratory relief appropriate with respect to the Class.

87.     Injunctive and declaratory relief is a significant component of the relief sought by Plaintiffs on behalf of themselves and the Class.

88.     The common issues of fact and law affecting Plaintiffs' claims and those of the

Class members, including the common issues identified above, predominate over any issues

affecting only individual claims.

89.     The Class is so numerous that joinder of all members is impracticable.

**FIRST CLAIM FOR RELIEF**
**(New York General Business Law §349)**
*On Behalf of Plaintiffs and the Class*

90.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by

reference all preceding paragraphs as if they were set forth again herein.

91.     As alleged herein, Defendants have been engaged, and continue to engage, in

consumer-oriented conduct towards Plaintiffs and the Class that was and continues to be false,

misleading and deceptive in a material way.

92.     Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the

deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in

connection with the cancellation of their TSI memberships.

93.     Defendants' conduct constitutes a willful violation of GBL §349.

**SECOND CLAIM FOR RELIEF**
**(D.C. Consumer Protection Procedures Act §§28-3901, *et seq*.)**
*On Behalf of Plaintiffs and the Class*

94.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by

reference all preceding paragraphs as if they were set forth again herein.

95.     As alleged herein, Defendants have been engaged, and continue to engage, in

consumer-oriented conduct towards Plaintiffs and the Class that was and continues to be false,

misleading and deceptive in a material way.

96.     Additionally, Defendants have failed to:  (i) state a material fact which misled Plaintiffs and the Class and (ii) supply Plaintiffs and the Class with copies of service contracts for them to execute.

97.     Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

98.     Defendants' conduct constitutes a willful violation of D.C. Consumer Protection Procedures Act §§28-3901, *et seq*.

## THIRD CLAIM FOR RELIEF
### (Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73 §201-1, *et seq.*)
### *On Behalf of Plaintiffs and the Class*

99.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

100.    Plaintiffs and the Class purchased goods and/or services from Defendants primarily for their personal use.

101.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were, and continue to be, false, misleading and deceptive in a material way.

102.    Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

103.    Defendants' conduct constitutes a willful violation of Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73 §201-1, *et seq*.

## FOURTH CLAIM FOR RELIEF
### (Connecticut Unfair Trade Practices Act, §42-110, *et seq.*)
#### *On Behalf of Plaintiffs and the Class*

104.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

105.     As alleged herein, Defendants have been engaged in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were misleading and deceptive in a material way.

106.     Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

107.     Defendants' conduct constitutes a willful violation of Connecticut Unfair Trade Practices Act, §42-110, *et seq*.

## FIFTH CLAIM FOR RELIEF
### (Maryland Consumer Protection Act, §13-101, *et seq.*)
#### *On Behalf of Plaintiffs and the Class*

108.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

109.     As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

110.     Also as alleged herein, Defendants failed to state a material fact that deceived and continues to deceive Plaintiffs and the Class.

111.    Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

112.    Defendants' conduct constitutes a willful violation of Maryland Consumer Protection Act, §13-101, *et seq*.

## SIXTH CLAIM FOR RELIEF
**(New Jersey Consumer Fraud Act, §56:8-1, *et seq*.)**
*On Behalf of Plaintiffs and the Class*

113.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

114.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

115.    Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

116.    Defendants' conduct constitutes a willful violation of New Jersey Consumer Fraud Act, §56:8-1, *et seq*.

## SEVENTH CLAIM FOR RELIEF
**(Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq*.)**
*On Behalf of Plaintiffs and the Class*

117.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

118.     As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

119.     Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

120.     Defendants' conduct constitutes a willful violation of Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq*.

### EIGHTH CLAIM FOR RELIEF
**(Virginia Consumer Protection Act of 1977, §59.1-196, *et seq.*)**
*On Behalf of Plaintiffs and the Class*

121.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

122.     As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

123.     Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

124.     Defendants' conduct constitutes a willful violation of Virginia Consumer Protection Act of 1977, §59.1-196, *et seq*.

## TENTH CLAIM FOR RELIEF
### (Conversion)
### *On Behalf of Plaintiffs and the Class*

125.   Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

126.   As alleged herein, Defendants have interfered with Plaintiffs' and the Class's possessory right or interest in money by unlawfully charging and receiving payments in connection with the cancellation of the Plaintiffs' and the Class' TSI memberships.

127.   As a result of Defendants' conduct, Plaintiffs and the Class have suffered damages for which they are entitled to injunctive relief and damages to the greatest extent permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, respectfully requests that this Court:

A.   Declare that the practices complained of herein are unlawful;

B.   Enjoin Defendants from continuing to engage in unlawful practices;

C.   Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

D.   Designate Plaintiffs as representatives of the Class;

E.   Designate Plaintiffs' counsel as counsel of record for the Class;

F.   Determine the damages sustained by Plaintiffs and the Class as a result of Defendants' unlawful conduct, and award those damages against Defendants and in favor of Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed;

G.   Award Plaintiffs and the Class any applicable statutory damages;

H.   Award Plaintiffs and the Class any and all other applicable damages;

18

I.      Award Plaintiffs and the Class their reasonable attorneys' fees and costs; and

J.      Grant Plaintiffs and the Class such other and further relief that the Court deems

just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury on all

issues of fact and damages.

Dated:  May 7, 2018
        New York, New York                          Respectfully submitted,

                                                     **WIGDOR LLP**

                                                     By: _____
                                                         David E. Gottlieb
                                                         Taylor J. Crabill

                                                     85 Fifth Avenue
                                                     New York, NY 10003
                                                     Telephone:  (212) 257-6800
                                                     Facsimile:   (212) 257-6845
                                                     dgottlieb@wigdorlaw.com
                                                     tcrabill@wigdorlaw.com

                                                     *Attorneys for Plaintiffs and*
                                                     *Proposed Class Counsel*