**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X

CHARLES LEHNERT, JENNIFER MUSARRA, and CELINE
D'AMORE,

     Plaintiffs, as proposed class
     representatives, on behalf of
     themselves and all others
     similarly situated; and

DAVID ALMONTE, ALISON ANDREL, ELISE ARTELT,
MAUREEN AVIONE, NYMAN AYDIN, MELISSA
BAUERNFEIND, APRIL BODDIE, RACHEL BRANDOFF,
PAMELA CAFFREY, ALANA CALMI, JARED COHEN,
LAUREN CULPEPPER, KARIN DAUBITZ, KYCIA DIAS,
ZACHARY TERRY-WADE, RACHEL ELLIS, BRIAN
FACCHIN, DANIELLA SMOLANICK, CASSIE
FARRELLY, ANDREW FORMAN, GREGORY
GOLEMBESKI, ROBERT GOODMAN, AHMAD HABIB,
CHRISTINA HIOUREAS, KATHERINE IRVING, MERIN
JACOB, VAIBHAV KAJLA, ANNA KOZIKOWSKA,
MAREK KULISEK, NICOLE KULISEK, CHRISTOPHER
LEAMAN, CHRISTOPHER LEMETRE, JACOB LEVIN,
MICHAEL LORD, JOSEPH OTT, HATSHEPSUT
PAKEMAN-SYMISTER, LEE PRESSER, JESSICA RAIMI,
SAMILYS RODRIGUEZ, DUYGUCAN SAHIN, WENDY
SCHOELER, JOSEPH SINGLETARY, ERIN MACKEY
SIRAGUSE, JOSEPH SMITH, DIANE SWICK, SHANNON
SYSKO, ALEX TREVES, GRETCHEN TREVES, EMILY
WICKSTROM, STEPHANIE WILSON, JENIN YOUNES,
and CHRISTIAN ZAMBRANO,

     Plaintiffs and members of the
     putative class,

   -against-

TOWN SPORTS INTERNATIONAL, LLC and TOWN
SPORTS INTERNATIONAL HOLDINGS, INC. d/b/a NEW
YORK SPORTS CLUBS, BOSTON SPORTS CLUBS,
WASHINGTON SPORTS CLUBS and PHILADELPHIA
SPORTS CLUBS,

     Defendants.

------------------------------------------------------------------------ X

Civil Action No.
18-cv-02705 (MKB)(RLM)

**SECOND AMENDED
CLASS ACTION
COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, and proposed Class Representatives, Charles Lehnert, Jennifer Musarra and Celine D'Amore, on behalf of themselves and the putative Class (as defined below), together with Plaintiffs, and members of the putative Class, David Almonte, Alison Andrel, Elise Artelt, Maureen Avione, Nyman Aydin, Melissa Bauernfeind, April Boddie, Rachel Brandoff, Pamela Caffrey, Alana Calmi, Jared Cohen, Lauren Culpepper, Karin Daubitz, Kycia Dias, Zachary Terry-Wade, Rachel Ellis, Brian Facchin, Daniella Smolanick, Cassie Farrelly, Andrew Forman, Gregory Golembeski, Robert Goodman, Ahmad Habib, Christina Hioureas, Katherine Irving, Merin Jacob, Vaibhav Kajla, Anna Kozikowska, Marek Kulisek, Nicole Kulisek, Christopher Leaman, Christopher Lemetre, Jacob Levin, Michael Lord, Joseph Ott, Hatshepsut Pakeman-Symister, Lee Presser, Jessica Raimi, Samilys Rodriguez, Duygucan Sahin, Wendy Schoeler, Joseph Singletary, Erin Mackey Siraguse, Joseph Smith, Diane Swick, Shannon Sysko, Alex Treves, Gretchen Treves, Emily Wickstrom, Stephanie Wilson, Jenin Younes and Christian Zambrano, (all together, "Plaintiffs") allege as follows:

## **PRELIMINARY STATEMENT**

1. Defendant Town Sports International, LLC ("TSI") – the owner of the New York Sports Clubs gym brand – engages in a fraudulent practice of charging membership fees even after members have given notice of cancellation. Incredibly, TSI was already investigated by the Washington D.C. Attorney General's Office of Consumer Protection for ***these exact same unlawful practices***. On November 21, 2017, Attorney General Karl A. Racine announced a settlement of these consumer fraud claims, stating:

> **Consumers should not be on the hook when companies mislead them with unclear and inconsistent cancellation policies. Washington Sports Club members who made a good-faith**

**effort to end their membership deserve the restitution that this settlement provides.**[1]

According to the Washington D.C. Attorney General's Office,

> **As part of its investigation, OAG [Office of the Attorney General] discovered that consumers who joined a Washington Sports Club were required to enter into membership agreements that contained year-long terms. Although the membership agreements stated that consumers must cancel in writing and give 30 days' notice, club employees routinely told consumers that they could cancel at any time by informing a desk employee or manager at the club. The company then continued to charge consumers who canceled in this manner.**

2.      Due to these deceptive and fraudulent business practices, TSI reached an agreement with the Washington D.C. Attorney General's Office which required TSI to pay substantial penalties and fees, pay restitution to members who were charged fees following cancellation, maintain records regarding these payments and pay additional restitution to other TSI members in the jurisdiction with similar complaints for a three year period.

3.      The Washington D.C. Attorney General's Office has taken formal action, but scores of customers have raised nearly identical complaints online, via social media channels and through Better Business Bureaus.  Below represents only a small sampling of such complaints:

---

[1]      Available at:  https://oag.dc.gov/release/attorney-general-obtains-settlement-washington



**Harvey S.**
Brooklyn, NY
0 friends
10 reviews

★☆☆☆☆ 4/13/2016

Back in, I believe, 2012 or perhaps 2013 I joined the New York Sports Club at 26 Court Street, the building in which my law office was located. Apart from the initial walk-through, I used NYSC once. The fee charged was some $69 per month. After approximately one year, realizing that despite my best intentions I was never going to actively use the club, I went downstairs to their office and spoke to the woman who then appeared to be in charge. I informed her that I wanted to cancel my membership; after our conversation I wasn't asked to sign anything and left.

Several years later, while reviewing my annual credit card statement with a view towards doing my own taxes, I noticed monthly references to payments to NYSC-Court Street. This led me to check past annual statements. I then realized that, notwithstanding the assurance which I had been given by their office staff, NYSC had for years been billing me monthly fees. When I again went to their location and spoke to a Customer Service Manager, Kyle, I was assured that he would address the problem and "get back to me." Of course, this never happened. I am now endeavoring to block future payments through my bank and, as a trial attorney of some 35 years experience, will consider commencing a lawsuit against NYSC to recoup monthly fees. There are apparently many such complaints against NYSC lodged with Consumer Affairs, one only has to check their complaints website. An industrial strength vacuum cleaner couldn't suck up money like NYSC, seemingly routinely, does. One star, only because I can't give it no stars, and five raspberries.

---

²     Available at: https://www.yelp.com/biz/new-york-sports-clubs-brooklyn-9?hrid=MYx5PCfun_hqFVWiJSVuaA&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)

# New York Sports Clubs

128 8th Ave, New York, NY

**3.5**     76 reviews     Sort by: Most relevant ▾

[ Write a review ]

---

 **Milad Mahdian**
Local Guide · 11 reviews · 1 photo

3 weeks ago

Beware that when you need to cancel your membership you need to let them know 45 days beforehand otherwise they charge you 1.5X your monthly fee. This is a scam to charge a termination fee because they don't advertise it when you sign up so how should one know about this.

Anyway, I had to cancel my membership due to relocation. Based on the contract which I saw later, I didn't need to give them 45 days notice. I went there in person once and called several times to cancel. But each time I could not reach the general manager, Mr. Kenny Rivera. I left messages each time and even emailed him directly but received no response back. My impression is that this guy doesn't care or even worse, he deliberately ignored my messages so that they charge me the "termination fee". Either way, terrible general manager, terrible club.

UPDATE: don't fall for the response the owner gave to my review. They never replied to my email. The whole thing is deceitful PR scheme. If you want your money stolen, go ahead and sign up!

 2

**Response from the owner** 6 months ago
Hi Milad,

We appreciate you taking the time to review our club. We're very sorry for the issues you have experienced and we'd like to follow up with you personally. If you could email HereToHelp@tsiclubs.com(please include your name, phone number, club location, copy & paste your review), a member of the Customer Services team will get back to you shortly. Thank you for reaching out.

Best,
The NYSC Team

---

[3]      Available at:
https://www.google.com/maps/place/New+York+Sports+Clubs/@40.7413094,-74.003285,17z/data=!3m1!4b1!4m10!1m2!2m1!1snew+york+sports+club++google+reviews!3m6!1s0x0:0x4f4fad43a91ff45a!8m2!3d40.7413069!4d-74.0010953!9m1!1b1



**Parikshit Juvekar** reviewed New York Sports Clubs —
September 7, 2017 ·

WAIT until it's time for you to CANCEL your membership! You'll be told 10 different cancellation policies that you apparently approved when you signed the contract. Not one straight answer. There's no way to get your hands on any of that documentation from when you signed. No information about it on their website or app. Their website audaciously lacks even as much as a Customer Care helpline number. The only way to contact them is through a contact form on the website to which they NEVER REPLY! Even if you do get your hands on their Customer Care number through a 3rd-party website, you'll never get to the point where you talk to a real human about your cancellation. (Also, just try asking an employee at one of their clubs to give you the number - they'll shamelessly ask you to google it. It seems that the clubs itself don't have any documentation or cards with the helpline or corporate number and the employees couldn't care less about finding it out).

I've been attempting to cancel since before this month began, but I've been blown off each time with a new excuse but they have never forgotten to keep charging my card! First impractical rule, you can cancel only in person at the specific club you signed up for. Second impractical rule, you have to make an appointment for 24 hrs after. Once I had done all that, I called ahead the next day before making the trip (because I was commuting from outside the city - the fact that I had moved out of the city was my primary reason to cancel my membership), I was told to come in for the appointment. When I get there, I'm told the General Manager didn't come in at all and ended up blowing off every appointment before me as well. I don't understand why this wasn't told me on the phone itself saving me a 3-hr. commute. The front desk staff showed no remorse or empathy. They just passed the buck to each other and basically told me to keep calling every morning to check if the GM is in and can attend to me or not (not sure how the GM doesn't have fixed days or hours - what sort of magical flexible part-time position are they offering her?). The one day that the GM happened to be in, I asked if I could come in immediately but I was told she's leaving and I should make another appointment which for was for the day after because guess what... the GM wasn't going to come in the following day either. I agree to indulge their nonsense further and make the appointment. When I call an hour prior, I'm once again told that the GM hasn't come in at all and that she MAY NOT come in the next day as well. Summarily, they have wasted more than a week having me call them everyday and make 3-hr. commutes just to be sent back from the front desk. During this ordeal, the date when they post a recurring charge on my card passes and surprise surprise, I'm charged WITHOUT FAIL. Even though I'm not going to be in the city to use ANY NYSC club (which is something they won't permit either not that it is feasible for me), I am still being made to pay. On top of all this, while I was initially told I could get a refund for this month; now I'm being told that there needs to be a 30-day notice and if any charges falling until then are non-refundable. It doesn't just end there, I'm also told that I may be charged a pro-rated amount for October because we are already well into September EVEN THOUGH I ALL OF THIS WAS A RESULT OF THEIR FAULT AND UNPROFESSIONALISM. Every day, I'm being given a new answer for what their cancellation policy is or what the past & future charges to my card will or won't be.

Pay twice the fee and go to another gym or even buy all the equipment and work out at home, it'll end up being cheaper than what these grifters will eventually rip off you! This is my harrowing and ongoing experience with the Avenue A club in NYC. I'm pretty sure it's the same across all their clubs. At this point, I still have no idea if ANY OF THEIR EMPLOYEES WILL EVER CANCEL MY MEMBERSHIP OR STOP CHARGING MY CARD!



235 Likes
11 talking about this

Like Page

---

4      Available at:
https://www.facebook.com/pg/NewYorkSportsClubs1601Broadway/reviews/?referrer=page_recommendations_see_all&ref=page_internal



**Jade Juhyun Y.**
Marietta, GA
👥 7 friends
⭐ 2 reviews

 6/1/2018

POOR! I canceled my membership due to moving out of the state in February, but I am getting charged TILL THIS DAY! I already called and emailed to let them know that I was still getting charged, and they said they got it figured out. But NO!!! I'm still getting charged. I demand a refund. This is RIDICULOUS!!!!



**Alison F.**
Oxford, Oxford, NJ
👥 66 friends
⭐ 25 reviews
📷 6 photos

 3/12/2017 · 🔄 Updated review

You may like the gym but good luck trying to cancel. Total run around. Have tried twice--was told to come in, then no one is there. Also random charges show up on your cc. Watch your statements!

Update: I emailed the address given in a response on 3/6/17. It's been a week--still waiting to hear back. Disputing all of it with my cc company. The rates were increased without notification, no ability to actually cancel the membership (after repeated attempts calling, in person and email) yet still charging monthly fees. For those who are still members, I hope your road is easier when trying to cancel.

---

5       Available at: https://www.yelp.com/biz/new-york-sports-clubs-brooklyn-9?hrid=uR6f_JoIjKo4rLhge8bF6Q&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)

6       Available at: https://www.yelp.com/biz/new-york-sports-clubs-new-york-87?hrid=mrcokGJHswtctJWE5BBWGQ&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)



**Emille Baker** reviewed New York Sports Clubs —
June 12, 2017 ·

It's impossible to cancel gym membership! Or you can cancel it but you will still be charged. My husband cancelled his membership on December 23rd 2015 since the gym changed location and since the last 18 months we have been charged monthly membership fees. We find out about it a few months ago and the Accounting Department at NYSC seems absolutely incompetent. As required we gave our complete credit card number, our last 3 balance statements showing the monthly charge and they are not able to cancel it or even retrieve the charge, giving us names of random people who has been charged with our credit card. What a mess! At this stage we are considering seeking legal representation to get out money back. Amex blocked the charge for us and seems much more helpful than NYSC. Therefore be careful cancelling your membership as the monthly charges might never end! Nevertheless to say that it took us a lot of time and effort to be able to be in touch with the accounting department. We deplore poor customer service! They gave us an attitude and makes this whole situation hard for us instead of being apologetic. It's unbelievable!

2 Comments

**Suzie Amatuzzi** reviewed New York Sports Clubs —
March 1 ·

The general manager of this club, Jillian Pollidore, has zero interest in doing her job. I cancelled my account, then was mysteriously billed months later, triple the amount my monthly dues had been. I have been trying for days to, again, cancel my account. Jillian told me she had done it and I come to find out she never cancelled my account and was going to continue billing me. In addition, she opened up a second fraudulent account in my name. She went so far as to fake the membership contract and signatures. This place is run by crooked individuals who will do anything to meet their corporate monthly quotas. Stay away. STAY FAR AWAY FROM THESE SKETCHBALLS.

9 Comments

---

[7]    Available at:
https://www.facebook.com/pg/NewYorkSportsClubs30BroadSt/reviews/?referrer=page_recommendations_see_all&ref=page_internal

[8]    Available at:
https://www.facebook.com/pg/NewYorkSportsClubs36W14thSt/reviews/?ref=page_internal



Amy Lee Esplain reviewed New York Sports Clubs —
November 9, 2017 ·

The BBB reviews illustrates a clear pattern with NY Sports Club: mismanagement, billing issues and lack of customer service. I'm awaiting a response from management that will try to 'cover up' all the issues here and address why they have 54 negative reviews, 655 customer complaints and BBB Rating of F as of 11/9/2017. I tried to cancel my gym membership several times. Two months later, I'm still being charged for a membership I had already cancelled in person but never received the promised confirmation call. I have tried to contact an account manager and told multiple times that the account manager was "in a meeting," "out of the office," "busy," "at lunch" or "stepped out." I finally pinned down an account manager, he insisted to know who I spoke to and was reluctant to give me a time frame of calling me back regarding an investigation on my account charges.

1 Comment



Mechi Kalaizic reviewed New York Sports Clubs —
May 31 ·

DON'T GO TO THIS GYM. I TRIED TO CANCEL MY MEMBERSHIP, THEY TOLD ME I HAD TO GO TO SPEAK WITH THE MANAGER IN PERSON AND AFTER I DID THEY TOLD ME I WAS GOING TO BE CHARGED FOR 45 MORE DAYS AND THEY CONTINUED CHARGING ME AFTER THOSE 45 DAYS. WHEN I CAME BACK TO ASK WHAT WAS GOING ON THEY SAID I HAD TO SHOW PROOF THAT I ASKED FOR MY CANCELLATION ALTHOUGH THEY HAD RECORD OF MY REQUEST THERE IN THEIR SYSTEM. I AM STILL WAITING FOR THEM TO CANCEL MY MEMBERSHIP. KRISTINE THAT IS THE MANAGER WAS REALLY RUDE AND DISRESPECTFUL. THEY STEAL PEOPLE'S MONEY.

1 Comment

---

9      Available at:
https://www.facebook.com/pg/NewYorkSportsClubs1601Broadway/reviews/?referrer=page_recommendations_see_all&ref=page_internal

10      Available at:
https://www.facebook.com/pg/NewYorkSportsClubs2830AvenueA/reviews/?referrer=page_recommendations_see_all&ref=page_internal



**Karina Ellis**
2 reviews

6 months ago

I've been trying to cancel my membership for almost 2 months now. I've spoken to multiple reps at this location promising to send me an email confirmation and to get my account canceled. Instead they've charged my card multiple times. As I no longer live in NY, I can't even go in person to get this handled. It's absolutely ridiculous the hoops I'm having to jump through just because their staff is incompetent.

👍 1



**Carrie L.**
Evansville, IN
136 friends
20 reviews
4 photos

★☆☆☆☆ 1/11/2018 · ↻ Updated review

WORST COMPANY!! AVOID!!!!!. Please see my "edited" review below of why this company is the worst. I accidentally "edited" a previous review instead of "update". THIS COMPANY WILL LITERALLY NOT LET YOU CANCEL YOUR MEMBERSHIP AND WILL CONTINUE TO TRY AND ROB YOU AFTER BEGGING AND PLEADING WITH THEM TO CANCEL!!!! I see a trend in the other reviews also about this issue! No wonder this place is 2 and half stars. Hopefully it'll be a 1 star once everyone realizes how terrible this place is. They won't let anyone cancel!!!!! It's ridiculous. I am waiting for a refund of one month but they still haven't gotten back to me after multiple calls, emails, and drop ins. The general manager plus other higher ups are HORRIBLE.

---

11  Available at:
https://www.google.com/maps/place/New+York+Sports+Clubs/@40.7413094,-74.003285,17z/data=!3m1!4b1!4m10!1m2!2m1!1snew+york+sports+club++google+reviews!3m6!1s0x0:0x4f4fad43a91ff45a!8m2!3d40.7413069!4d-74.0010953!9m1!1b1

12  Available at: https://www.yelp.com/biz/new-york-sports-clubs-new-york-87?hrid=qpYH3c7vNkEV-fdJQjNseg&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)



**Kelly D.**
TX, TX
290 friends
3 reviews
1 photo

⭐ 5/10/2018

I wish I could give this place -15 stars. They have by far the WORST customer service I have ever encountered. Christina their manager had me sign a cancellation form in DECEMBER to cancel my membership and said I would have no other payments due. I am now getting calls from COLLECTIONS agencies because they are trying to get a cancellation payment from me?? They didn't respond to my emails for 6 months and now I am getting penalized for it. This is after they charged me FULL PRICE for 2 months while my account was supposed to be frozen. Have never gotten reimbursed for that and now I actually owe them money somehow?? Unbelievable. I tried calling corporate thinking they would understand, and tried telling them that I have proof in numerous emails that the club never got back to me for numerous requests for help to put my new credit card file. And corporate told me "there's nothing we can do and we are not allowed to review your emails" WHAT KIND OF CUSTOMER SERVICE SAYS THAT?!? Do yourself a favor and go to another gym. These people are criminals.



**Leila A.**
Manhattan, NY
0 friends
15 reviews

⭐ 4/4/2018

This place is the worst. I had a membership, but had to put my membership on hold when I was pregnant. They never stopped charging me! I called many times, and never received a return call. I eventually had to cancel my credit card so I wouldn't keep paying for the gym. I was enraged. I had been a member for many years, and they still treated me this way. I had called the club manager, and he still hast returned my calls. This is a disgrace.

---

13    Available at: https://www.yelp.com/biz/new-york-sports-clubs-new-york-87?hrid=bhq0KEFfx8yhhW1WR1IXjw&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)

14    Available at: https://www.yelp.com/biz/new-york-sports-clubs-hoboken-3?hrid=n_rUyFbBQHLzZJWROMi1BA&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)



**Jessica X.**
East Village, Manhattan, NY
👥 164 friends
📷 13 reviews
📷 9 photos

⭐☆☆☆☆ 10/3/2017

WORST GYM EVER. Not only is it dirty, but the cancellation policy is frustrating. Gee, there probably isn't even a cancellation policy and here's why:

My sisters and I have been trying to cancel our membership for a couple of months now. Manager is rude and never wants to talk to anyone. I've went in several times and called several times. The receptionists tell me the manager is the only person who can cancel memberships yet she (Catherine, the manager) is NOWHERE to be found. She's definitely in the office though, but just doesn't want to hear from you unless you're opening an account, I'm sure.

It's now October and I'm still getting charged. I've recently filed complaints with my bank to put a block on the merchant (I didn't know I could do this) and if you're dealing with the same problem, I urge you to do the same if you haven't already. This is beyond ridiculous. They're literally stealing money. I'm so f*ckin pissed and they will tell you the same things over and over again. Wait for 30 days for it to cancel, still get charged the next month, calls back to complain, they say the same thing and say they have fwded my account info to the manager to cancel and that i'll receive an email confirmation but i never get one... it's a cycle.

DON'T EVER SIGN UP, YOU'LL NEVER BE ABLE TO GET OUT OF IT.

4.      Nonetheless, it appears to be "business as usual" at TSI.  TSI does not appear to have taken any legitimate action to address what appears to be a systemic practice to cheat customers out of their hard-earned money.  This practice simply must come to an end.

5.      Plaintiffs bring this action seeking declaratory, injunctive and monetary relief, on behalf of themselves and the Class, due to TSI's unlawful conduct in violation of New York General Business Law ("GBL") §349; D.C. Consumer Protection Procedures Act §28-3901, et seq. ("DCCPPA"); Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73 §201-1, et seq. ("PUTPCPL"); Connecticut Unfair Trade Practices Act, §42-110, et seq. ("CUTPA"); Maryland Consumer Protection Act, §13-101, et seq. ("MCPA"); New Jersey

---

[15]      Available at: https://www.yelp.com/biz/new-york-sports-clubs-new-york-87?hrid=OgaCiTaZV036AyhKlC6SPg&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)

Consumer Fraud Act, §56:8-1, *et seq*. ("NJCFA"); Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq*. ("RIUTPCPA"); Virginia Consumer Protection Act of 1977, §59.1-196, *et seq*. ("VCPA") and Mass. Consumer Protection Act, M.G.L.A. c. 93A §§1, *et seq.*("MGL 93A")  (the, "Consumer Fraud and Protection Statutes"); and/or for engaging in conversion.

## JURISDICTION AND VENUE

6.      The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of residence of the named parties.  The Court also has diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed Class has more than 100 members, contains at least one member of diverse citizenship from Defendants and the amount in controversy exceeds $5 million.

7.      The Court has personal jurisdiction over Defendants because Defendants are authorized to, and do, conduct business in New York and in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to this action occurred in this District.

9.      On May 9, 2018, Plaintiffs sent Defendants a demand letter pursuant to MGL 93A, thereby satisfying the administrative pre-requisite to commencing a consumer fraud action.

10.     Following the commencement of this action, Plaintiffs delivered a copy of the Complaint to the Connecticut Attorney General and Commissioner of Consumer Protection pursuant to CUTPA § 42-110g(c).

11.     Following the commencement of this action, Plaintiffs delivered a copy of the Complaint to the New Jersey Attorney General pursuant to NJCFA § 56:8-20.

12.     Following the commencement of this action, Plaintiffs delivered a copy of the Complaint to the Rhode Island Attorney General pursuant to RIUTPCPA § 6-13.1-5.2.

13.     Plaintiffs' claims are properly asserted together as a single consolidated action as their claims arise from a similar nexus of facts and circumstances and will be established using similar and overlapping evidence.

## PARTIES

14.     Plaintiff Charles Lehnert is an adult resident of Hudson County, New Jersey.  Mr. Lehnert became a member of New York Sports Clubs ("NYSC") on or about April 30, 2017.

15.     Plaintiff Jennifer Musarra is an adult resident of Queens County, New York.  Ms. Musarra became a member of NYSC in or around January 2017.

16.     Plaintiff Celine D'Amore is an adult resident of New York County, New York.  Ms. D'Amore became a member of NYSC on or about March 28, 2016.

17.     Plaintiff David Almonte is an adult resident of the State of New York.  Mr. Almonte became a member of NYSC in or about May 2017.

18.     Plaintiff Alison Andrel is an adult resident of the State of Pennsylvania.  Ms. Andrel became a member of Philadelphia Sports Clubs ("PSC") in or about May 2017.

19.     Plaintiff Elise Artelt is an adult resident of the State of Pennsylvania.  Ms. Artelt became a member of PSC in or about January 2017.

20.     Plaintiff Maureen Avione is an adult resident of the State of New York.  Ms. Avione became a member of NYSC in or around 2015.

21.     Plaintiff Nyman Aydin is an adult resident of the State of New Jersey.  Mr. Aydin became a member of NYSC on or about January 2017.

22.     Plaintiff Melissa Bauernfeind is an adult resident of the State of New York.  Ms. Bauernfeind became a member of NYSC in or around 2012.

23.     Plaintiff April Boddie is an adult resident of New York County, New York.  Ms. Boddie became a member of NYSC in or about 2015.

24.     Plaintiff Rachel Brandoff is an adult resident of the State of Pennsylvania.  Ms. Brandoff became a member of NYSC in or about June 2016.

25.     Plaintiff Pamela Caffrey is an adult resident of the State of New Jersey.  Ms. Caffey became a member of NYSC in or about November 2016.

26.     Plaintiff Alana Calmi is an adult resident of the State of New York.  Ms. Calmi became a member of NYSC in or about May 2017.

27.     Plaintiff Jared Cohen is an adult resident on the State of Texas.  Mr. Cohen became a member of PSC in or about 2015.

28.     Plaintiff Lauren Culpepper is an adult resident of the State of Florida.  Ms. Culpepper became a member of NYSC in or about 2015.

29.     Plaintiff Karin Daubitz is an adult resident of the State of New York.  Ms. Daubitz became a member of NYSC in or about January 2014.

30.     Plaintiff Kycia Dias is an adult resident of the State of New York.  Ms. Dias became a member of NYSC in or about July 2018.

31.     Plaintiff Zachary Terry-Wade is an adult resident of the State of New York.  Mr. Terry-Wade became a member of NYSC in or about June 2018.

32.     Plaintiff Rachel Ellis is an adult resident of the State of New York.  Ms. Ellis became a member of NYSC in or around 2017.

33.     Plaintiff Brian Facchin is an adult resident of the State of New York.  Mr. Facchin became a member of NYSC on or about January 2017.

34.     Plaintiff Daniella Smolanick is an adult resident of the State of New York.  Ms. Smolanick became a member of NYSC in or about January 2017.

35.     Plaintiff Cassie Farrelly is an adult resident of the State of New York.  Ms. Farrelly became a member of NYSC in or around 2010.

36.     Plaintiff Andrew Forman is an adult resident of the State of Pennsylvania.  Mr. Forman became a member of PSC on or about August 2014.

37.     Plaintiff Gregory Golembeski is an adult resident of the State of Pennsylvania.  Mr. Golembeski became a member of PSC on or about February 14, 2018.

38.     Plaintiff Robert Goodman is an adult resident of the State of New Jersey.  Mr. Goodman became a member of NYSC on or about September 2016.

39.     Plaintiff Ahmad Habib is an adult resident of the State of New York.  Mr. Habib became a member of NYSC in or around 2012.

40.     Plaintiff Christina Hioureas is an adult resident of the State of New York.  Ms. Hioureas became a member of NYSC in or around 2016.

41.     Plaintiff Katherine Irving is an adult resident of the State of Massachusetts.  Ms. Irving became a member of Boston Sports Clubs ("BSC") in or around August 2016.

42.     Plaintiff Merin Jacob is an adult resident of the State of New York.  Mr. Jacob became a member of NYSC in or around June 2017.

43.     Plaintiff Vaibhav Kajla is an adult resident of the State of New Jersey.  Mr. Kajla enrolled his parents as members of NYSC in or around 2016.

44.     Plaintiff Anna Kozikowska is an adult resident of the State of New York.  Ms. Kozikowska became a member of NYSC in or about April 2017.

45.     Plaintiffs Nicole and Marek Kulisek are adult residents of the State of New York.  Mr. and Ms. Kulisek became members of NYSC in or about January 2018.

46.     Plaintiff Christopher Leaman is an adult resident of the State of Massachusetts.  Mr. Leaman became a member of BSC on or about November 2017.

47.     Plaintiff Christopher Lemetre is an adult resident of the State of New York.  Mr. Lemetre became a member of NYSC in or about October 2015.

48.     Plaintiff Jacob Levin is an adult resident of the State of Massachusetts.  Mr. Levin became a member of BSC in or around September 2016.

49.     Plaintiff Michael Lord is an adult resident of the State of New York.  Mr. Lord became a member of NYSC in or around June 2017.

50.     Plaintiff Joseph Ott is an adult resident of the State of Pennsylvania.  Mr. Ott was a member of PSC.

51.     Plaintiff Hatshepsut Pakeman-Symister is an adult resident of the State of New York.  Ms. Pakeman-Symister became a member of NYSC before 2010.

52.     Plaintiff Lee Presser is an adult resident of the State of New York.  Mr. Presser became a member of NYSC many years ago.

53.     Plaintiff Jessica Raimi is an adult resident of the State of New York.  Ms. Raimi became a member of NYSC before 2010.

54.     Plaintiff Samilys Rodriguez is an adult resident of the State of Massachusetts.  Ms. Rodriguez became a member of BSC in or around 2016.

55.     Plaintiff Duygucan Sahin is an adult resident of the State of Massachusetts.  Ms. Sahin became a member of BSC on or about January 2017.

56.     Plaintiff Wendy Schoeler is an adult resident of the State of New Jersey.  Ms. Schoeler became a member of NYSC on or about May 17, 2017.

57.     Plaintiff Joseph Singletary is an adult resident of the State of Massachusetts.  Mr. Smith became a member of BSC in or around October 2018.

58.     Plaintiff Erin Mackey Siraguse is an adult resident of the State of Virginia.  Ms. Siraguse became a member of Washington Sports Clubs ("WSC") in or about 2014.

59.     Plaintiff Joseph Smith is an adult resident of the State of Massachusetts.  Mr. Smith became a member of BSC in or around May 2017.

60.     Plaintiff Diane Swick is an adult resident of the State of New York.  Ms. Swick became a member of NYSC in or about 2016.

61.     Plaintiff Shannon Sysko is an adult resident of the State of Pennsylvania.  Ms. Sysko became a member of PSC in or around September 2018.

62.     Plaintiffs Alex and Gretchen Treves are adult results of the State of Massachusetts.  Mr. and Ms. Treves became BSC members in or around March 2017.

63.     Plaintiff Emily Wickstrom is an adult resident of the State of Massachusetts.  Ms. Wickstrom became a member of BSC in or around 2015.

64.     Plaintiff Stephanie Wilson is an adult resident of La Rochelle, France.  Ms. Wilson became a member of NYSC on or around October 4, 2018.

65.     Plaintiff Jenin Younes is an adult resident of the State of New York.  Ms. Younes became a member of NYSC in or about November 2015.

66. Plaintiff Christian Zambrano is an adult resident of the State of New York. Mr. Zambrano became a member of NYSC on or around April 2018.

67. Defendant Town Sports International, LLC, d/b/a New York Sports Clubs, is a domestic limited liability company with its primary business being the running and operating of gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs, and which has a principal place of business located at 5 Penn Plaza, 4th Floor, New York, New York 10001.

68. Defendant Town Sports International Holdings, Inc., d/b/a New York Sports Clubs, is a foreign corporation incorporated in Delaware with its primary business being the running and operating of gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs, and which has a principal place of business located at 1001 US North Highway 1, Suite 201, Juniper, Florida 33477.

## FACTS

**Factual Allegations**

69. Town Sports International, LLC is one of the largest owners/operators of fitness clubs in the country, with approximately 587,000 current members and approximately 165 gyms located in New York, Massachusetts, Washington D.C., Pennsylvania, Connecticut, Maryland, New Jersey, Rhode Island and Virginia.

70. Among other properties and brands, TSI owns and operates approximately 102 gyms under the brand "New York Sports Clubs," 30 gyms under the brand "Boston Sports Clubs," 10 gyms under the brand "Washington Sports Clubs" and five gyms under the brand "Philadelphia Sports Clubs." Certain of these gym locations are in the neighboring states of Connecticut, Maryland, New Jersey, Rhode Island and Virginia.

71.    TSI requires consumers to become a TSI gym member ("TSI Gym Member") in order to gain access to use its gym locations.

72.    In order to obtain a TSI gym membership, customers enter into agreements with TSI where they agree to pay a sum of money in exchange for access to one or more TSI gym locations.  However, TSI holds customers to additional terms never agreed upon.

73.    For instance, when potential customers go to a TSI location to become a member, it appears TSI does not present them with written contracts to sign in order to become a TSI Gym Member, or at least only does so very rarely or in atypical situations.

74.    As a matter of practice, TSI staff will verbally present to potential customers the monthly rate for the type of gym access the customer is interested in purchasing.

75.    Then, potential customers become TSI Gym Members pursuant to the terms verbally presented to them by either verbally assenting to the terms or by signing an electronic pad presented to them by a TSI staff member (and providing a form of payment, usually a credit or debit card for automatic monthly charges).

76.    Once a customer signs the electronic pad, TSI has in its possession an electronic image of the customer's signature, which is saved to TSI's electronic records database.  Upon information and belief, the electronic pads that capture customer signatures are created by Topaz Systems, Inc., though TSI may also use other devices such as iPads.

77.    TSI will then superimpose a TSI Gym Member's signature on a document containing various terms and conditions for membership at TSI ("Fraudulent Membership Contract") and retain that document internally as a supposedly agreed-upon contract.

78.    TSI unlawfully acts as though the Fraudulent Membership Contracts are legitimate agreements.

79.     However, TSI Gym Members are never informed of the vast majority of these contractual terms, never informed that their signatures will be superimposed onto a contract and never informed that there are any membership terms other than those verbally presented to them.

80.     Upon information and belief, the reason TSI engages in these practices is that the terms of the Fraudulent Membership Contracts are completely unreasonable and the company is concerned that customers would not agree to the terms if actually presented to them, including the term: "By signing this Agreement, the member grants the Clubs the right to use their photographic likeness for promotional purposes, including, without limitation, for online usage and marketing materials."

81.     Many of TSI's written membership contracts also contain the following or substantially similar language with respect to cancellation of memberships:

> You may cancel your Month-to-Month at any time by (1) giving notice at the club and obtaining a cancellation receipt, or (2) sending a written notification by certified or registered mail to the club at the address set forth above. *Your cancellation will be effective 45 days after you provide proper notice of cancellation, and you will continue to have the services provided under this agreement and be billed accordingly until the end of the 45 day notice period.*

(emphasis added).

82.     In sum, according to this provision, a TSI Gym Member must pay for an additional 45 days of membership once they inform TSI that they desire to cancel their membership.

83.     Moreover, according to this provision, to cancel a membership, TSI Gym Members must obtain a "cancellation receipt" or send TSI "a written notification by certified or registered mail."

84. TSI attempts to hold TSI Gym Members who try to cancel their TSI gym memberships to these supposed "policies" or "contract terms" – whether TSI has a Fraudulent Membership Contract on file or not.

85. Moreover, TSI often does not even honor customer cancellation requests in the first place and continues to charge TSI Gym Members with additional membership and other fees even long after they have cancelled their memberships.

86. TSI follows a similar practice when potential customers enroll over the phone or online. When members sign up over the phone, TSI representatives provide the monthly membership rate and do not inform the potential customer that there are any fees associated with cancellations or that cancellations need to be accomplished in any particular manner. Upon information and belief, despite the fact that there is no executed contract when a potential customer enrolls over the phone, TSI will create a Fraudulent Membership Contract for the customer without any signature at all. Similarly, when members sign up online, despite the website affirmatively stating "Want to cancel? No problem." and confirming "No Hidden Fees," TSI hides the fact that it will impose additional fees and charges upon and after cancellation.

87. Upon information and belief, thousands of TSI Gym Members have cancelled and/or attempted to cancel their memberships with TSI within the relevant statutory period.

88. Upon information and belief, thousands of TSI Gym Members who have cancelled and/or attempted to cancel their memberships with TSI never agreed to be bound by any purported policies or terms related to the cancellation of their TSI memberships.

89. Accordingly, TSI Gym Members never authorized TSI to charge their credit or debit cards for any charges following notice of cancellation.

90.     TSI has charged at least 30 or 45 days' worth of membership fees to TSI Gym Members who have cancelled their TSI memberships and who never agreed to be subject to any purported policies or terms related to the cancellation of their TSI memberships.

91.     Moreover, upon information and belief, TSI has refused to honor TSI Gym Members' attempts to cancel their memberships either because TSI has taken the position that the TSI Gym Member failed to comply with the technicalities of purported policies or terms related to the cancellation of his or her TSI membership or because TSI has otherwise simply refused to process a TSI Gym Member's request for cancellation.

92.     In those situations, upon information and belief, TSI Gym Members are continually charged membership dues even though the TSI Gym Member attempted to cancel his or her TSI gym membership.

**Plaintiff Charles Lehnert**

93.     Plaintiff Charles Lehnert became a TSI Gym Member on or around April 30, 2017 after agreeing via telephone to membership terms with a male TSI manager from one of Defendants' gyms located at 59 Newark Street, Hoboken, New Jersey 07030 (the "Hoboken Gym").

94.     Mr. Lehnert asked the TSI manager who he spoke to over the phone about TSI's cancellation policy and the manager told Mr. Lehnert that he could cancel his membership at any time.

95.     A few days after he became a TSI Gym Member, Mr. Lehnert visited the New York Sports Club located in Jersey City, New Jersey and spoke with both a male and female sales agent.  These employees told Mr. Lehnert that he was required to place his signature on an electronic pad to effectuate his membership.

96.     The electronic pad Mr. Lehnert signed did not display any contract terms and only contained a small area for Mr. Lehnert to place his signature.

97.     TSI never provided Mr. Lehnert with any purported written membership contract.

98.     Mr. Lehnert never agreed nor was he ever notified that he had to pay for an additional 45 days of membership once he cancelled his TSI gym membership.

99.     Mr. Lehnert never agreed nor was he ever notified that he had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

100.    Between November 2017 and January 2018, Mr. Lehnert made several unsuccessful attempts to cancel his TSI membership.

101.    In mid-November 2017, Mr. Lehnert contacted a TSI corporate office by calling a phone number that he located via internet searches.  On this phone call, Mr. Lehnert spoke to a TSI representative and said that he wanted to cancel his membership.  The TSI representative told Mr. Lehnert that he could not cancel his membership on the call and that he needed to contact his "home gym" to cancel his membership.

102.    In late November 2017, Mr. Lehnert called the Hoboken Gym, spoke with a TSI representative and said he wanted to cancel his membership.  The TSI representative told Mr. Lehnert that he needed to come to the location in person or send a letter to cancel his membership.  Mr. Lehnert asked to speak with a manager but was told that a manager was not available.

103.    A couple of days later, Mr. Lehnert called the Hoboken Gym, spoke with a TSI representative and again asked to speak with a manager but was told there was no manager available.  Mr. Lehnert asked the TSI representative to have a manager call him back.

104. Approximately one week later, Mr. Lehnert called the Hoboken Gym and spoke with a TSI representative named Jordan. Mr. Lehnert told Jordan that he had called a few days before and asked when he would be able to speak with a manager. Jordan told Mr. Lehnert that the manager was not available at that time.

105. On or around January 4, 2018, Mr. Lehnert submitted an online request to cancel his membership via the TSI website. Mr. Lehnert's cancellation request stated as follows:

> This message is another cancellation notice for account #0006948916. I've asked multiple times for a call back from the manager, Andrew, at this location with no response. I have left my cancellation notice with Jordan in late 2017. Any further charges to my credit card are UNAUTHORIZED, and let this message will serve as further notice of cancellation of my account.

106. TSI never responded to Mr. Lehnert's request through the website.

107. On or around January 5, 2018, Mr. Lehnert visited a Yelp webpage for the Hoboken Gym and noticed that in response to a customer complaint, a TSI business customer service employee, Erin, left a posted stating "If you could email HereToHelp@tsiclubs.com, a member of the Customer Services team will get back to you shortly."

108. On January 5, 2018, Mr. Lehnert sent an email at 3:26 p.m. to HereToHelp@tsiclubs.com stating,

> Hello,
>
> I found this email address on Yelp in response to another member's review.
>
> I have been trying to cancel my membership now for over a month. I have called the location I initially signed up with multiple times—each time being told that the manager, Andrew, is in a meeting or unavailable to take my call. I have asked for a call back each time with no response.
>
> Please take this as notice of membership cancellation. If this is made any more difficult than it already has been, I will make sure

to never sign back up with NYSC in the future. I was only planning on cancelling for a short time and signing back up afterward, but based on my experience so far, that won't be happening. This is a great way to lose potential future customers.

109.    TSI never responded to Mr. Lehnert's email.

110.    On January 12, 2018, Mr. Lehnert sent letter to TSI's Member Services

Department stating,

Sir or Madam:

This message is *another* cancellation notice for account #0006948916. I've asked the representatives answering the phone at the 59 Newark St, Hoboken, NJ location multiple times for the manager, Andrew, to call me back, with no response. I have left my cancellation notice with Jordan in late 2017. Management is not available every time a cancellation effort is made in-person or by phone, and the representatives claim they are unable to enact my cancellation. To this date, I have sent notice of cancellation by multiple methods with no response, and your company continues to charge my credit card ending in 7598. Any further charges to my credit card are UNAUTHORIZED. Let this message also serve as additional notice of my account cancellation.

Before this ordeal, I was considering cancelling only for a short time and reopening my account at some point later this year. However, seeing how your business has handled this and the fact that these practices are essentially theft, I will never give NYSC or Town Sports any future business.

I expect a response with written confirmation of my account cancellation.

111.    TSI never responded to Mr. Lehnert's letter.

112.    TSI never cancelled Mr. Lehnert's TSI gym membership despite his requests.

113.    Since Mr. Lehnert first attempted to cancel his TSI gym membership, TSI has

continued to charge Mr. Lehnert's credit card.

114.    Mr. Lehnert never authorized TSI's continued charges.

115.    As a result, Mr. Lehnert was forced to instruct his bank to cease all payments to

TSI to avoid any future charges.

**Plaintiff Jennifer Musarra**

116. Plaintiff Jennifer Musarra became a TSI Gym Member in or around January 2017 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located in Whitestone, New York.

117. Ms. Musarra was told she could cancel her membership at any time.

118. TSI never provided Ms. Musarra with any purported written membership contract.

119. Ms. Musarra was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

120. The electronic pad Ms. Musarra signed did not display any contract terms and only contained a small area for Ms. Musarra to place her signature.

121. Ms. Musarra never agreed nor was she ever notified that she had to pay for an additional 45 days of membership once she cancelled her TSI gym membership.

122. Ms. Musarra never agreed nor was she ever notified that she had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

123. In or around November 2017, Ms. Musarra made several attempts to cancel her TSI membership, including by faxing a notice of cancellation to TSI.

124. Soon after sending the fax, a TSI agent informed Ms. Musarra that her membership would not be cancelled until January 2018.

125. TSI never cancelled Ms. Musarra's TSI gym membership.

126. Since Ms. Musarra first attempted to cancel her TSI gym membership, TSI has continued to charge Ms. Musarra's credit card.

127. Ms. Musarra never authorized TSI's continued charges.

128.     As a result, Ms. Musarra was forced to instruct her bank to cease all payments to TSI to avoid any future charges.

**Plaintiff Celine D'Amore**

129.     Plaintiff Celine D'Amore became a TSI Gym Member on or about October 1, 2012 after agreeing to membership terms with a TSI agent via telephone.

130.     Ms. D'Amore was told she could cancel her membership at any time.

131.     Ms. D'Amore cancelled her membership on March 28, 2016.

132.     That same day, Ms. D'Amore entered a new TSI membership at a different rate. Ms. D'Amore and a TSI agent agreed to the terms of her new membership via telephone and text message.

133.     Ms. D'Amore never signed a TSI written contract nor was she ever instructed by TSI agent to place her signature on an electronic pad.

134.     Upon information and belief, a TSI agent forged Ms. D'Amore's signature onto a TSI membership contract.

135.     Ms. D'Amore never agreed nor was she ever notified that she had to pay for an additional 45 days of membership once she cancelled her TSI gym membership.

136.     Ms. D'Amore never agreed nor was she ever notified that she had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

137.     On April 5, 2018, Ms. D'Amore filed a cancellation request form to cancel her TSI membership.

138.     TSI never cancelled Ms. D'Amore's TSI membership.

139.     Since Ms. D'Amore first attempted to cancel her TSI gym membership, TSI has continued to charge Ms. D'Amore's debit card.

140.     Ms. D'Amore never authorized TSI's continued charges.

141.     As a result, Ms. D'Amore was forced to file a dispute with her credit card company and instruct her bank to cease all payments to TSI to avoid any future charges.

**Plaintiff David Almonte**

142.     Plaintiff David Almonte became a TSI Gym Member for the NYSC located in Park Slope, Brooklyn in or around May 2016.

143.     Mr. Almonte was told his membership was a month-to-month membership and he could cancel his membership at any time.

144.     Mr. Almonte was never told about any "waiting period" or "notice period" before he could cancel his gym membership.

145.     Mr. Almonte was not told of any particular process or method he had to follow in order to cancel his TSI gym membership.

146.     In or around August 2016, Mr. Almonte went to the Park Slope NYSC branch and informed a TSI representative that he wanted to cancel his membership.

147.     The TSI representative confirmed to Mr. Almonte that there would not be any additional charges.

148.     On or about October 16, 2016, Mr. Almonte noticed additional charges on his credit card from TSI.  Mr. Almonte never approved or authorized these charges.

149.     Mr. Almonte called the Park Slope NYSC branch to inquire about the charges, and they told him TSI had "put a note on [his] account to cancel" on August 18, 2016, but that TSI had not yet actually cancelled his membership, which was why he was continuing to be charged.  Mr. Almonte was told he had to speak to the branch manager who was not in that day.

150.    Later that evening, Mr. Almonte received a cancellation invoice from TSI, but no refund of any improper charges.

151.    On October 18, 2016, Mr. Almonte called the Park Slope NYSC location and spoke to the manager, who said he would consider refunding the second month charge, but not the first charge, because it was company policy to charge an additional 45 days after cancellation.

152.    Mr. Almonte asked the manager for a copy of the contract where he agreed to that term.  TSI then sent Mr. Almonte an auto-filled purported contract which did not contain any signature or other indication of Mr. Almonte's consent to any of the terms.

153.    Upon information and belief, TSI generated a fraudulent purported contract that had never previously been shown to or agreed to by Mr. Almonte.

154.    Mr. Almonte complained about this fraudulent conduct to the Better Business Bureau, and in response to his complaint, TSI admitted that Mr. Almonte requested to cancel on August 18, 2016, but that "[i]n error the cancellation was not processed."

155.    However, while TSI refunded some charges, TSI refused to refund all the charges to Mr. Almonte following his notice of cancellation.

**Plaintiff Alison Andrel**

156.    Plaintiff Alison Andrel was a TSI Gym Member in Pennsylvania and paid a monthly membership fee for access to TSI's gyms.  Ms. Andrel also paid for personal training through TSI as well.

157.    When she became a TSI Gym Member or anytime thereafter during her membership, Ms. Andrel was never told or otherwise informed that there was any particular

process that she would be required to follow in order to effectuate the cancellation of her membership or any other services.

158. When she became a TSI Gym Member or anytime thereafter during her membership, Ms. Andrel was never was never told or otherwise informed that she would be subject to any additional fees or charges after she cancelled her membership

159. On or about May 15, 2018, per the express instructions from her TSI personal trainer, Sergio Jackson, on how to cancel both her training and her membership, Ms. Andrel sent him a membership cancellation request email, asking to cancel her membership as well as her personal training.

160. Ms. Andrel's personal trainer then forwarded her cancellation request via email to another TSI employee named George Holifield.

161. On or about May 16, 2018, Mr. Holifield sent Ms. Andrel an email acknowledging her membership cancellation request and cancellation of her personal training.

162. On or about October 9, 2018, a debt collection company known as Radius Global Solutions ("Radius") contacted Ms. Andrel via a letter, saying she owed a $300 past due amount to TSI.

163. Ms. Andrel had not previously received any communication regarding any outstanding balance. Ms. Andrel attempted to contact Radius to dispute the charges but was unable to reach anyone.

164. Ms. Andrel then called her PSC gym location and spoke to Taylor Santora, a membership sales consultant, and inquired about the reason for the charges and the lack of any previous notice before it was sent to collections.

165.     Ms. Santora informed Ms. Andrel that she had to speak to the manager of the location, Bryan Ortiz, but that he was in Las Vegas on his honeymoon so she had to be "patient" and wait for him to return.

166.     Ms. Andrel then called PSC's corporate member services coordinator, Karen Heimbach, by calling (877) 258-2311, and stated that she had cancelled her membership via email and that she had never been given any notice of past due amounts.

167.     Ms. Heimbach told Ms. Andrel that TSI's policy is that cancellation requests must be made in person, not by email, and that TSI had no obligation to give notice of past due amounts before sending an account out for collections.

168.     Ms. Andrel then complained to the Better Business Bureau and TSI, through an employee named Shelley Eilenberg, refused to waive the improper charges and falsely claimed that Ms. Andrel had agreed to pay these additional charges.

169.     Ultimately, Ms. Andrel paid the amounts the collection agency demanded because she wanted to end the harassment and was concerned it would impact her credit rating.

**Plaintiff Elise Artelt**

170.     Plaintiff Elise Artelt joined PSC in or around January 2017.

171.     Ms. Artelt is a senior citizen.

172.     Ms. Artelt signed up and enrolled at the PSC located in Radner, Pennsylvania.

173.     Ms. Artelt intended to sign up for personal training sessions, but was told she also had to enroll as a gym member.

174.     Ms. Artelt was not told any terms or conditions of becoming a gym member.

175.     Ms. Artelt was not told she would be subject to any additional fees upon or following the cancellation of her membership.

176.    Ms. Artelt was not told there were any restrictions on her ability to cancel her membership.

177.    Ms. Artelt was not told that a request to cancel her membership would be ineffective unless she complied with certain processes or procedures.

178.    In or around March 2017, Ms. Artelt informed the GM named David at the Radner PSC location that she was unable to use the gym due to a serious medical condition and provided a doctor's note.

179.    Nonetheless, TSI continued to charge Ms. Artelt both for her membership and personal training sessions in April, August and September of 2017.

180.    When Ms. Artelt finally realized that these payments were being charged to her account, she complained to GM David at the Radner PSC location and he agreed to provide her a refund for certain charges totalling approximately $1,300 for August and September.

181.    However, no refund was issued to Ms. Artelt for April.  All Ms. Artelt was told was that she would be given a one-month credit if she wanted to return following her medical leave.

182.    In or around February 2018, Ms. Artelt returned to the Radner PSC location to use her one-month credit.  However, PSC then continued to charge her for March 2018 after that point without her consent.

183.    Ms. Artelt saw this charge and informed GM David that she wanted to fully cancel her account to make sure there were no additional charges, and she was told her membership was cancelled and would incur no further charges.

184.    Nonetheless, TSI continued to charge Ms. Artelt additional fees for April, May, June, July and August.  Ms. Artelt never approved or authorized these charges.

185.    As a result, Ms. Artelt was forced to cancel her credit card to avoid further charges.

**Plaintiff Maureen Avione**

186.    Plaintiff Maureen Avione became a TSI Gym Member in or around 2015 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located in Nesconset, New York.

187.    Ms. Avione was told she could cancel her membership at any time.

188.    TSI never provided Ms. Avione with any purported written membership contract and never told Ms. Avione of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

189.    Ms. Avione was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

190.    The electronic pad Ms. Avione signed did not display any contract terms and only contained a small area for Ms. Avione to place her signature.

191.    Ms. Avione never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she cancelled her TSI gym membership.

192.    On or around November 1, 2017, Ms. Avione emailed Mario Curcio, a TSI agent at the Nesconset NYSC branch, and informed him that she was cancelling her membership.  Mr. Curcio responded that all cancellations are handled through the club and that she needed to speak with a manager the next time she visited the gym in order to cancel.

193. The next day, Ms. Avione visited the Nesconset branch, informed a TSI agent that she was cancelling her membership and provided the TSI agent with a letter stating that she was cancelling her membership. The TSI agent responded that her membership would be cancelled.

194. The following month, Ms. Avione noticed that TSI was continuing the charge her credit card. Ms. Avione never approved or authorized these charges.

195. Subsequently, Ms. Avione called Nesconset branch regarding TSI's unauthorized charges but was informed by a TSI agent that there was nothing they could do about the unauthorized charges.

196. TSI never refunded Ms. Avione for the unauthorized charges related to the cancellation of her membership.

**Plaintiff Nyman Aydin**

197. Plaintiff Nyman Aydin joined NYSC in or around January 2017.

198. Mr. Aydin became a member by signing up in-person at the NYSC located in Marlboro, New Jersey.

199. Mr. Aydin met with a TSI sales representative who told him what the terms and conditions of membership would be. Mr. Aydin was told that he would pay a monthly membership fee for the right to use and access the gym, but that he could cancel his membership at any time.

200. Mr. Aydin was never told that he would be subject to any additional charges or fees if and when he cancelled his membership or that there would be any additional charges after he cancelled.

201.    Mr. Aydin was also never told that he needed to do anything in particular to effectuate his cancellation or that his cancellation would only be effective only upon certain conditions precedent.

202.    In or around summer 2017, Mr. Aydin visited the Marlboro NYSC location and informed a TSI sales representative that he wanted to cancel his membership. Mr. Aydin was told his membership was cancelled.

203.    Thereafter, TSI continued to charge Mr. Aydin additional fees that he never approved or authorized. Mr. Aydin contacted the gym many times by phone to dispute the charges, but after leaving several messages he never received a return phone call.

204.    Mr. Aydin informed his credit card company not to accept any other charges from TSI. Mr. Aydin then received a letter from a collections agency seeking payment of unapproved charges on TSI's behalf.

205.    Mr. Aydin then filed a complaint with the Better Business Bureau and TSI finally relented and refunded certain of the post-cancellation charges, but refused to provide Mr. Aydin with a complete refund of the fraudulent and unapproved charges.

**Plaintiff Melissa Bauernfeind**

206.    Plaintiff Melissa Bauernfeind joined NYSC in or around 2012. Ms. Baurenfiend enrolled in-person at the NYSC located in Whitestone, Queens.

207.    Ms. Bauernfeind agreed to pay monthly membership dues, but was never told there would be any additional charges or fees upon the cancellation of her membership or that there was any process she needed to follow to cancel membership.

208.     In October 2017, Ms. Baurenfeind cancelled her membership by speaking with a customer service representative named Daniel Stern.  However, membership charges continued thereafter.

209.     In February 2018, Ms. Bauernfeind received a letter from TSI stating that her account would be sent to collections if she did not pay sums that were charged to her following her cancellation request.  Ms. Bauernfeind spoke to Mr. Stern who told her the matter was resolved.

210.     However, TSI continued to charge Ms. Bauernfeind for the membership she had cancelled.  Ms. Bauernfeind contacted her credit card company and put a stop payment order on all charges from TSI.

211.     Ms. Bauernfeind then contacted Mr. Stern again and he apologized and said the charges would not happen again.  However, TSI continued to charge Ms. Bauernfeind fees that she never authorized or approved.

**Plaintiff April Boddie**

212.     Plaintiff April Boddie became a TSI Gym Member in or around 2015 after agreeing to membership terms with a TSI agent via an in-person meeting at a location on 145th Street in Manhattan.

213.     Ms. Boddie was verbally told that she could become a TSI Gym Member in exchange for monthly payments and she was never told that there was any advance notice required to cancel her membership.

214.     Ms. Boddie was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

215.    The electronic pad Ms. Boddie signed did not display any contract terms and only contained a small area for Ms. Boddie to place her signature.

216.    TSI never provided Ms. Boddie with any purported written membership contract.

217.    Ms. Boddie never agreed nor was she ever notified that she had to pay for an additional 45 days of membership once she cancelled her TSI gym membership.

218.    Ms. Boddie never agreed nor was she ever notified that she had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

219.    In or around May 2018, Ms. Boddie called TSI's corporate office and informed TSI that she was cancelling her membership, and she was told that TSI would not accept her cancellation unless she cancelled her membership in person.

220.    Thereafter, Ms. Boddie went to the TSI location on 91st Street in Manhattan and informed TSI staff at the front desk that she was cancelling her membership, and she was told that TSI would not accept her cancellation unless she went in-person to her home gym.

221.    In or around June 2018, Ms. Boddie went to the TSI location on 145th Street in Manhattan where she originally became a TSI Gym Member and informed TSI staff at the front desk that she was cancelling her membership.  However, she was told that she would continue to be charged her membership dues for 45 days.

222.    TSI continued to charge Ms. Boddie membership fees even after she informed her home gym that she was cancelling her membership.

223.    Ms. Boddie never authorized TSI's continued membership charges following her notice of cancellation.

224.    Upon learning that TSI would continue to charge her following her request to cancel her membership, Ms. Boddie visited the 145th Street branch several times.

**Plaintiff Rachel Brandoff**

225.    Plaintiff Rachel Brandoff became a TSI Gym Member in or around June 2016 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located on 94th Street and Broadway in Manhattan.

226.    Ms. Brandoff was told she could cancel her membership at any time, and TSI never provided her with any purported written membership contract.

227.    Ms. Brandoff was instructed to sign an electronic signature pad which did not display any contract terms and only contained a small area for her signature.

228.    Ms. Brandoff never agreed nor was she ever notified that she had to pay for any additional fees or charges after cancelling her membership.

229.    Ms. Brandoff never agreed nor was she ever notified that she had to use or follow any particular process to cancel her membership.

230.    Ms. Brandoff also enrolled in childcare services, which she was also told she could cancel at any time without any additional fees or charges.

231.    In or around November 2016, Ms. Brandoff called her NYSC location to cancel her membership and childcare services because she was moving to Pennsylvania in January 2017.  Ms. Brandoff was told they would not cancel her membership over the phone.

232.    Thereafter, TSI continued to charge Ms. Brandoff both her membership dues and for childcare services she was not using and had attempted to cancel.

233.    In January 2017, Ms. Brandoff again called the NYSC location and again told a TSI representative she wanted to cancel her membership, and she was told that her membership and childcare would be cancelled.

234. Thereafter, Ms. Brandoff noticed that TSI continued to charge her recurring monthly membership fees and childcare charges through the Summer 2017.

235. Ms. Brandoff then called the NYSC location again and informed a TSI representative that she wanted to cancel her membership. Nonetheless, additional charges continued to be charged to Ms. Brandoff's credit card.

236. TSI's awareness that Ms. Brandoff had cancelled her membership is demonstrated, among other ways, by the fact that in October 2017, TSI emailed her and stated, "I understand you were previously a member at New York Sports Club and we would love to have you back working out with us!" During the time of this email, TSI was continuing to charge Ms. Brandoff additional fees.

237. In total, Ms. Brandoff was charged well in excess of $1,000 after she had attempted to cancel her membership and childcare services.

**Plaintiff Pamela Caffrey**

238. Plaintiff Pamela Caffrey became a TSI Gym Member in or around November 2016, after receiving an email regarding a promotional membership deal.

239. In or around late November, 2016, Ms. Caffrey called the phone number identified in the email, spoke to a TSI membership salesperson and signed up for a gym membership.

240. During this phone call, the TSI membership salesperson explained to Ms. Caffrey that she would be charged $5.00, then the first month would be free, and the rate would be approximately $19.95 per month thereafter.

241. During this phone call, Ms. Caffrey specifically asked the TSI membership salesperson whether there would be any additional charges or fees and was told there would not be any additional charges or fees.

242. During this phone call, the TSI membership salesperson asked Ms. Caffrey for her credit card information, which she provided.

243. During this phone call, Ms. Caffrey was told she could cancel her membership at any time without any additional charges or fees.

244. During this phone call, Ms. Caffrey was not informed of any other membership or contract terms or informed that there were any other terms or conditions applicable to her membership as a TSI Gym Member.

245. During this phone call, Ms. Caffrey was not informed of any additional fees, and she never agreed to pay any additional fees other than the agreed-upon monthly membership rate.

246. In or around January 2017, Ms. Caffrey noticed on her credit card statement that she was charged an additional $74.89. Only following numerous inquiries to TSI regarding the charge, Ms. Caffrey was finally informed that it was an annual membership fee.

247. Ms. Caffrey never agreed nor authorized payment of any annual membership fee.

248. Ms. Caffrey asked TSI for a refund of the charge which she never agreed to, but TSI refused to provide any refund.

249. Ms. Caffrey spoke to Andrew Seecharan, the GM of her NYSC branch, who refused to address Ms. Caffrey's complaint and hung up the phone on her. Ms. Caffrey called the NYSC main corporate phone number, but the person she spoke to was unable to address this fraudulent charge.

250. Shortly thereafter, a result of TSI's fraudulent billing practices, Ms. Caffrey cancelled her TSI gym membership.

251. However, even after she cancelled her membership, TSI continued to charge Ms. Caffrey additional charges or fees.

252. TSI never provided Ms. Caffrey with any purported membership contract.

253. TSI never provided Ms. Caffrey with any purported membership terms related to cancellation or additional charges other than what she was told over the phone regarding monthly membership rates.

254. Ms. Caffrey never agreed nor was she ever notified that she had to pay any additional charges or fees once she cancelled her TSI gym membership.

255. Ms. Caffrey never agreed nor was she ever notified that she had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

**Plaintiff Alana Calmi**

256. Plaintiff Alana Calmi became a TSI Gym Member in or around May 2017.

257. Ms. Calmi signed up and enrolled to become a NYSC member via an online application and agreed to pay monthly membership fees to use the gym located in Great Neck, New York.

258. Ms. Calmi was informed through the online application process that she could cancel her membership at any time and that there would be no fees or charges associated with or following cancellation.

259. Ms. Calmi was never informed that she had to follow any particular method or process for her to effectively cancel her membership.

260.     In early 2018, Ms. Calmi sought to cancel her NYSC membership.  Ms. Calmi called TSI, and they told her, in sum and substance, "Oh, it's a process.  It isn't just a button we click and you are no longer a member.  You have to come in and sign paperwork and then we put the paperwork in to process the cancellation."

261.     Ms. Calmi was told by TSI's corporate office that upon cancellation of membership she would still have 45 days of membership.  This meant that regardless what date Ms. Calmi cancelled, she would have to pay for an additional 45 days of membership.

262.     Ms. Calmi never agreed to or authorized these charges.

263.     Ms. Calmi was not permitted to cancel her membership over the phone and was forced to go to her NYSC location in-person to cancel her membership.

264.     Ms. Calmi complained about this conduct to the Better Business Bureau and complained that she never agreed to these charges.  In response, a TSI employee named Shelley Eilenberg stated that Ms. Calmi had agreed to these charges and fees in a purported membership contract and attached the contract.

265.     However, the membership contract provided by Ms. Eilenberg had no signature or other indication showing that Ms. Calmi had agreed to its terms.  TSI never provided Ms. Calmi with any purported written membership contract.   Ms. Eilenberg refused to refund or waive any of these charges.

**Plaintiff Jared Cohen**

266.     Captain Jared Cohen is an active member of the United States Army.

267.     Cpt. Cohen became a TSI Gym Member in or around 2015 after agreeing to membership terms with a TSI agent at one of Defendants' PSC gyms located in Philadelphia, Pennsylvania.

268.    Cpt. Cohen was told he could cancel his membership at any time.

269.    TSI never provided Cpt. Cohen was never told of any additional charges or fees he would be obligated to pay after providing notice of cancellation.

270.    Cpt. Cohen was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

271.    The electronic pad Cpt. Cohen signed did not display any contract terms and only contained a small area for Cpt. Cohen to place his signature.

272.    Cpt. Cohen never agreed nor was he ever notified that he had to pay for any additional days of membership, or any other charges or fees, once he canceled his TSI gym membership.

273.    In or around May 2016, Cpt. Cohen visited the PSC branch and informed a TSI agent that he was cancelling his membership because he was being deployed to Texas.

274.    Cpt. Cohen provided the TSI agent with a copy of his military orders regarding his deployment.  The TSI agent told Cpt. Cohen that he needed to speak with a manager to cancel his membership.

275.    Subsequently, Cpt. Cohen spoke with a manager from PSC branch and provided the manager with a copy of his military orders.  The manager stated the Cpt. Cohen's membership would be cancelled.

276.    Cpt. Cohen then emailed the manager stating that he cancelled his membership because he was being deployed to Texas.

277.    In or around June 2016, Cpt. Cohen noticed that TSI was continuing the charge his credit card.  Cpt. Cohen never approved or authorized these charges.

278. Cpt. Cohen then called PSC branch to complain about the unauthorized charges and was told by a TSI representative that his cancellation request was being processed and that his membership would be cancelled.

279. TSI continued to charge Cpt. Cohen without his authorization for several months.

280. Cpt. Cohen then called TSI's corporate office to complain about the unauthorized charges. A TSI representative told Cpt. Cohen that he did not see a copy the military orders Cpt. Cohen provided to TSI and stated that TSI would look into the unauthorized charges.

281. Subsequently, Cpt. Cohen provided TSI's corporate office with a copy of his military orders and Cpt. Cohen's membership was cancelled in August 2016.

282. TSI never refunded Cpt. Cohen for the unauthorized charges.

**Plaintiff Lauren Culpepper**

283. Plaintiff Lauren Culpepper became a TSI Gym Member in or around 2015 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located on Broadway and Spring Street in Manhattan.

284. Ms. Culpepper was told she could cancel her membership at any time.

285. Ms. Culpepper was never provided with any purported written membership contract or otherwise informed of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

286. Ms. Culpepper was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

287. The electronic pad Ms. Culpepper signed did not display any contract terms and only contained a small area for Ms. Culpepper to place her signature.

288.     Ms. Culpepper never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she cancelled her TSI gym membership.

289.     In or about May 2017, Ms. Culpepper called her gym location to cancel her membership because she was moving to Miami, Florida.  The TSI agent Ms. Culpepper spoke to informed her that they would continue to charge her for an additional 30 days.

290.     Moreover, following Ms. Culpepper's notice of cancellation, TSI charged Ms. Culpepper an additional annual membership fee of $49.95.  Despite Ms. Culpepper's numerous inquiries, TSI refused to refund this charge.  Ms. Culpepper never agreed to these charges.

**Plaintiff Karin Daubitz**

291.     Plaintiff Karin Daubitz became a TSI Gym Member in or around January 2014 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located at the Rosman Center, Garnerville, New York 10923.

292.     Ms. Daubitz was told she could cancel her membership at any time.

293.     TSI never provided Ms. Daubitz with any purported written membership contract, and Ms. Daubitz was never told of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

294.     Ms. Daubitz never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she cancelled her TSI gym membership.

295.     In or around June 2016, Ms. Daubitz called the Garnerville NYSC branch and informed a TSI agent that she was cancelling her membership.  The TSI agent told Ms. Daubitz that TSI would not cancel her membership and that she needed to cancel in-person.

296. Ms. Daubitz then visited the Garnerville NYSC branch to cancel her membership but was told by a TSI representative that only a manager could cancel her membership and that no manager was presently working at the gym.

297. Subsequently, Ms. Daubitz noticed that TSI was continuing to charge her credit card. Ms. Daubitz never approved or authorized these charges.

298. In or around September 2016, Ms. Daubitz contacted a TSI regional manager and complained about TSI's unauthorized charges. The regional manager confirmed in an email to Ms. Daubitz that she cancelled her membership in June 2016.

299. However, TSI continued to charge Ms. Daubitz's credit card without her authorization and hired a collections agency to recover her supposed past due payments.

300. Ms. Daubitz then tried to call the Garnerville NYSC branch regarding the continued unauthorized charges but was informed that she needed to speak with a manager and that a manager was not present.

301. TSI never fully refunded Ms. Daubitz for the unauthorized charges.

**Plaintiffs Kycia Dias and Zachary Terry-Wade**

302. Plaintiffs Kycia Dias and Zachary Terry-Wade became TSI Gym Members in or around July 2018 and June 2018, respectively. Ms. Dias and Mr. Terry-Wade are married.

303. Ms. Dias and Mr. Terry-Wade signed up at the gym location in Commack, New York, and were both assisted by a TSI membership salesperson named Seth who informed them of the membership terms.

304. Ms. Dias and Mr. Terry-Wade were told that they would each be charged a monthly membership rate of approximately $25 per month to use the gym, but were not informed of any other membership terms related to any additional charges or fees.

305.     Ms. Dias and Mr. Terry-Wade were told they could cancel their memberships at any time.

306.     TSI never provided Ms. Dias or Mr. Terry-Wade with any purported written membership contracts.

307.     Ms. Dias and Mr. Terry-Wade were each instructed to sign an electronic pad in order to become a TSI Gym Member and were never told that their signatures would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

308.     The electronic pad Ms. Dias and Mr. Terry-Wade signed did not display any contract terms and only contained a small area for them to place their signature.

309.     Ms. Dias and Mr. Terry-Wade never agreed nor were they ever notified that they had to pay for any additional days of membership, or any additional charges or fees, once they cancelled their TSI gym membership.

310.     Ms. Dias and Mr. Terry-Wade never agreed nor were they ever notified that they had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail."

311.     In or around August 9, 2018, Ms. Dias and Mr. Terry-Wade each informed a TSI agent at the Commack location named John Bruno that they wanted to cancel their memberships. Mr. Bruno informed Ms. Dias and Mr. Terry-Wade that their cancellations were effective that day.

312.     Thereafter, TSI charged additional charges and fees to Ms. Dias and Mr. Terry-Wade's credit cards.  Ms. Dias and Mr. Terry-Wade never authorized TSI's continued charges.

313.    Ms. Dias and Mr. Terry-Wade attempted to contact Mr. Bruno by phone to address these fraudulent charges but were never able to reach him and never received any return phone calls.

314.    As such, Ms. Dias and Mr. Terry-Wade went back to the Commack location. There, they found Mr. Bruno.  Mr. Bruno asked Ms. Dias and Mr. Terry-Wade to sign an electronic pad and informed them that their cancellation would be effective immediately.

315.    Thereafter, TSI charged additional charges and fees to Ms. Dias and Mr. Terry-Wade's credit cards.  Ms. Dias and Mr. Terry-Wade never authorized TSI's continued charges.

316.    Ms. Dias and Mr. Terry-Wade called the Commack location to address the issue and spoke to a TSI agent.  The TSI agent informed Ms. Dias and Mr. Terry-Wade that their membership accounts were still noted as active and that Mr. Bruno had informed her that he had convinced Ms. Dias and Mr. Terry-Wade to keep their memberships open when they last visited the location.  Of course, this was completely false.

317.    Thereafter, TSI charged additional charges and fees to Ms. Dias and Mr. Terry-Wade's credit cards.  Ms. Dias and Mr. Terry-Wade never authorized TSI's continued charges.

318.    Ultimately, Ms. Dias and Mr. Terry-Wade closed their credit cards to avoid continuing charges from TSI.

**Plaintiff Rachel Ellis**

319.    Plaintiff Rachel Ellis became a TSI Gym Member in or around March 2018 so she could use the NYSC located in Cobble Hill, Brooklyn.

320.    Ms. Ellis became a TSI Gym Member by signing up online.

321.    The online membership enrolment form stated that her membership would be "month-to-month" and that she could cancel her membership at any time.

322.     Specifically, the online enrolment forms state: "Want to cancel?  No problem. End your month-to-month plan any time or your one year commitment plan after 12 months."

323.     Moreover, the enrollment forms expressly stated in large, boldface font that there would be "**No Hidden Fees.**"

324.     On the "Checkout" page of the enrolment forms, the NYSC website lists numerous applicable fees, including the Monthly Fee, Annual Fee, Joining Fee and Pro-Rated Dues.

325.     TSI's enrollment forms were deceptive and failed to inform or adequately inform her of any supposed cancellation fees or any other fees due following cancellation.

326.     Ms. Ellis relied on the representations in TSI's enrollment forms.

327.     Ms. Ellis chose to enroll in a month-to-month membership rather than an annual membership even though it was more expensive because it provided her the flexibility to cancel her membership at any time and for any reason.

328.     Ms. Ellis never received a copy of any membership contract.

329.     On July 9, 2018, Ms. Ellis informed TSI that she wanted to cancel her membership.  In response, Ms. Ellis was told that she needed to pay a cancellation fee and an additional 45 days of membership fees.

330.     TSI charged Ms. Ellis for an additional 45 days of membership and a cancellation charge.  Ms. Ellis never agreed to or authorized these charges.

**Plaintiffs Brian Facchin and Daniella Smolanick**

331.     Plaintiffs Brian Facchin and Daniella Smolanick – who are engaged – became TSI Gym Members in or around January 2017.  They signed up at the NYSC location in Glendale, Queens.

332.     When they enrolled, Mr. Facchin and Ms. Smolanick met with a TSI agent who stated that he was the manager of the Glednale NYSC location.

333.     The manager told Mr. Facchin and Ms. Smolanick that they would be obligated to pay a monthly membership fee in order to access the gym location.

334.     Mr. Facchin and Ms. Smolanick were told they could cancel their memberships at any time, and were not told about any additional fees associate with or following cancellation.

335.     Moreover, Mr. Facchin and Ms. Smolanick were never told they had to follow any particular process or method in order to cancel their gym memberships.

336.     After the manager described these terms, the manager asked Mr. Facchin and Ms. Smolanick to sign an electronic an electronic pad to complete the membership enrollment.

337.     The electronic pad did not include any supposed contract terms and only had a small place for Mr. Facchin to sign his name.

338.     In or around April 2017, Mr. Facchin and Ms. Smolanick made several trips to the Glendale NYSC location to cancel and told the TSI sales representatives to cancel their memberships.

339.     Mr. Facchin and Ms. Smolanick had to make numerous trips because they were told by TSI sales representatives that they had to speak to a manager to cancel their memberships and the manager was not present on several of their visits.

340.     Mr. Facchin and Ms. Smolanick called the Glendale NYSC location in advance of several of these visits to ensure a manager would be present, but then when they arrived the manager was not at the location.

341. TSI continued to charge Mr. Facchin and Ms. Smolanick additional membership fees that they never agreed to, authorized or approved even after they communicated to TSI that they wanted to cancel their memberships.

**Plaintiff Cassie Farrelly**

342. Plaintiff Cassie Farrelly became a TSI Gym Member in or around 2010.

343. Ms. Farrelly's home gym was the NYSC located at 1231 Third Avenue (52nd Street) in Manhattan.

344. Ms. Farrelly was told she could cancel her membership at any time and without any additional charges or fees.

345. In May 2015, Ms. Farrelly went into her NYSC location and informed a TSI employee that she wanted to cancel her membership. However, the TSI representative told her she could not cancel in-person.

346. After Ms. Farrelly informed TSI that she wanted to cancel her membership, TSI continued to charge her additional monthly membership dues. Ms. Farrelly did not agree to or authorize these charges.

347. Thereafter, Ms. Farrelly engaged in numerous additional communications in an attempt to cancel her membership, including contacting TSI's corporate member services personnel and sending a certified letter stating that she wanted to cancel her membership.

348. TSI finally cancelled Ms. Farrelly's membership in June 2015.

349. Even after that, TSI continued to charge Ms. Farrelly additional monthly membership dues and fees. Ms. Farrelly did not agree to or authorize these charges.

**Plaintiff Andrew Forman**

350.     Plaintiff Andrew Forman became a TSI Gym Member in or around August 2014.

351.     Mr. Forman signed up in person at a PSC location in Spring Garden, Pennsylvania.

352.     As part of the enrollment process, Mr. Forman was instructed to sign an electronic pad and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

353.     The electronic pad Mr. Forman signed did not display any contract terms and only contained a small area for Mr. Forman to place his signature.

354.     Mr. Forman was told he could cancel his membership at any time and was never told about any additional fees or charges after he cancelled his membership or for cancelling his membership.

355.     Mr. Forman was never told he needed to cancel his membership in any particularly manner, such as by obtaining a "cancellation receipt" or sending "a written notification by certified or registered mail."

356.     In August 2014, TSI advertised a promotion stating that said if a member referred a friend a $50 credit would be added to the member's account.   Mr. Forman referred two friends and was given notice via email that he would receive a $50 credit for each referral, totaling $100.

357.     Also in or around August 2014, TSI listed a new promotion which stated that current members could switch membership from $54 per month to $20 per month, but only have access to one gym location.

358.     Mr. Forman informed a TSI employee that he wanted to take advantage of this promotion.  However, Mr. Forman was told that if he switched his membership plan prior to receiving his referral credits, the referral credits would not be issued to him.

359.     As a result, Mr. Forman decided to wait until two more months.  As Mr. Forman understood, the net cost to him for these months would effectively be $4 per month given that his billing rate was $54 per month, but he would be getting two $50 credits.

360.     Mr. Forman was later told that he would not get the promised referral fees, resulting in a significant expense to him, as he otherwise would have been paying only $20 per month rather than $54 per month.

361.     In or around December 2014, Mr. Forman decided he wanted to then cancel his membership entirely.  Mr. Forman complained to a TSI customer service representative named Jackie about the referral fee not being honored, and in response he received an email notice that his membership was cancelled and that he had a $0 balance.

362.     In or around May 2015, Mr. Forman received a letter from a collection agency called Central Credit Services stating that he owed PSC $164.00.  Mr. Forman called his PSC location directly and a TSI agent told him his balance was $0 when he cancelled on December 22, 2014, but was then changed to $164 on December 24, 2014.   Mr. Forman never agreed to or authorized these charges.

363.     On May 18, 2015, Mr. Forman spoke to a TSI customer representative to complain about these charges and nothing was done to address his complaints.  Moreover, Mr. Forman asked to speak to a supervisor, but the TSI agent refused to allow him to speak to a supervisor and told him they were all busy and could not call him back even in the future.

**Plaintiff Gregory Golembeski**

364.     Plaintiff Gregory Golembeski became a TSI Gym Member on or around February 14, 2018 after agreeing to membership terms with a TSI agent at one of Defendants' PSC gyms located at 220-250 South 5th Street, Philadelphia, Pennsylvania 19106.

365.     The TSI sales representative that met with Mr. Golembeski never informed Mr. Golembeski of any purported cancellation policy or fee.

366.     TSI never provided Mr. Golembeski with any purported written membership contract or otherwise informed him of any additional charges or fees he would be obligated to pay after providing notice of cancellation.

367.     Mr. Golembeski was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

368.     The electronic pad Mr. Golembeski signed did not display any contract terms and only contained a small area for Mr. Golembeski to place his signature.

369.     Mr. Golembeski never agreed nor was he ever notified that he had to pay for any additional days of membership, or any other charges or fees, once he cancelled his TSI gym membership.

370.     In or around May 2018, Mr. Golembeski called the South 5th Street PSC branch and informed a TSI agent that he was cancelling his membership.  The TSI representative told Mr. Golembeski that he could not cancel his membership over the phone and needed to cancel in person.

371. That same day, Mr. Golembeski went to the South 5th Street PSC branch and informed a TSI representative that he was cancelling his membership. Mr. Golembeski was told that he needed to mail a letter to cancel his membership.

372. After Mr. Golembeski attempted to cancel his TSI gym membership, TSI continued to charge Mr. Golembeski's credit card. Mr. Golembeski never authorized TSI's continued charges.

373. As a result, Mr. Golembeski was forced to instruct his bank to cease all payments to TSI to avoid any future charges.

374. On October 19, 2018, Taylor Garretz, a TSI sales representative, called Mr. Golembeski and stated that he had an outstanding balance and that his cancellation could only be cancelled by sending a letter via certified mail.

375. On October 23, 2018, Mr. Golembeski emailed Edward Gonzalez, a TSI General Manager, and stated that he had cancelled his membership. Mr. Gonzalez responded that Mr. Golembeski had an outstanding balance that was being sent to a collections agency.

376. TSI never agreed to waive or refund any of these additional charges.

**Plaintiff Robert Goodman**

377. Plaintiff Robert Goodman became a TSI Gym Member in or around September 2016 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located in the Harborside Financial Center, Jersey City, New Jersey 07311.

378. Mr. Goodman was told he could cancel his membership at any time.

379. TSI never provided Mr. Goodman with any purported written membership contract or otherwise informed him of any additional charges or fees he would be obligated to pay after providing notice of cancellation.

380. Mr. Goodman was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

381. The electronic pad Mr. Goodman signed did not display any contract terms and only contained a small area for Mr. Goodman to place his signature.

382. Mr. Goodman never agreed nor was he ever notified that he had to pay for any additional days of membership, or any other charges or fees, once he cancelled his TSI gym membership.

383. In or around January 2017, Mr. Goodman called the Jersey City NYSC location and informed a TSI agent that he wanted to cancel his membership. The TSI agent informed Mr. Goodman that his membership was cancelled.

384. However, TSI continued to charge Mr. Goodman's credit card after he cancelled his membership. Mr. Goodman never authorized TSI's continued charges.

385. Subsequently, Mr. Goodman again attempted to cancel his TSI membership, including by twice notifying TSI that he was cancelling his membership via a contact box located on his TSI online membership account. Mr. Goodman did not receive a response to his cancellation requests.

386. Despite notifying TSI of his cancellation several times, TSI continued to charge Mr. Goodman's credit card without his authorization.

**Plaintiff Ahmad Habib**

387. Plaintiff Ahmad Habib became a TSI Gym Member in or around 2012 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located in Rego Park, New York.

388.     Mr. Habib was told he could cancel his membership at any time.

389.     TSI never provided Mr. Habib with any purported written membership contract and never told Mr. Habib of any additional charges or fees he would be obligated to pay after providing notice of cancellation.

390.     Mr. Habib was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

391.     The electronic pad Mr. Habib signed did not display any contract terms and only contained a small area for Mr. Habib to place his signature.

392.     Mr. Habib never agreed nor was he ever notified that he had to pay for any additional days of membership, or any other charges or fees, once he cancelled his TSI gym membership.

393.     In or around June 2017, Mr. Habib called the Rego Park NYSC branch and informed a TSI agent that he was cancelling his membership.  The TSI agent told Mr. Habib that his membership was cancelled.

394.     Several days later, Mr. Habib visited the Rego Park NYSC location and was again told by a TSI agent that his membership was cancelled.

395.     Subsequently, Mr. Habib noticed that TSI was continuing the charge his credit card.  Mr. Habib never approved or authorized these charges.

396.     Mr. Habib then called TSI's corporate office to complain about the unauthorized charges and was told by a TSI representative that the corporate office could not address his complaint, he would continue to be charged and he needed to reach out to the gym location where he signed up to be a TSI member.

397.     Mr. Habib called the Rego Park NYSC branch but no TSI representative answered or returned Mr. Habib's calls.

398.     TSI never refunded Mr. Habib for the unauthorized charges.

**Plaintiff Christina Hioureas**

399.     Plaintiff Christina Hioureas became a TSI Gym Member in or around 2016 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located in the West Village neighborhood of Manhattan, New York.

400.     Ms. Hioureas was told she could cancel her membership at any time.

401.     TSI never provided Ms. Hioureas with any purported written membership contract and never told Ms. Hioureas of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

402.     Ms. Hioureas was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

403.     The electronic pad Ms. Hioureas signed did not display any contract terms and only contained a small area for Ms. Hioureas to place her signature.

404.     Ms. Hioureas never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she cancelled her TSI gym membership.

405.     In or around January 2018, Ms. Hioureas called and visited the West Village location and informed TSI agents that she was cancelling her membership.

406.     Despite cancelling her membership, TSI continued to charge Ms. Hioureas's credit card for months without her authorization.

407.     Subsequently, Ms. Hioureas noticed that TSI was continuing the charge her credit card.  Ms. Hioureas never approved or authorized these charges.

408.     Ms. Hioureas contacted the West Village location regarding TSI's unauthorized charges and was informed by a TSI agent that TSI had misspelled Ms. Hioureas' name in Defendants' system and that they needed to correct her name in order to cancel her membership.

409.     TSI never fully refunded Ms. Hioureas for the unauthorized charges.

**Plaintiff Katherine Irving**

410.     Plaintiff Katherine Irving became a BSC member in or around August 2016.

411.     Ms. Irving enrolled at the BSC located in Woburn, Massachusetts.

412.     Ms. Irving met with a TSI sales representative who told Ms. Irving that she would be obligated to pay a monthly membership fee.

413.     Ms. Irving was asked to sign an electronic pad to complete the enrollment process, but she was not told that her signature would be pasted onto a contract or that she was agreeing to any terms other than those told to her verbally.

414.     Ms. Irving was told she could cancel her membership at any time and that she would not be subject to any additional fees or charges to cancel her membership or after she cancelled her membership.

415.     In August 2017, Ms. Irving cancelled her membership with BSC.  The sales representative told Ms. Irving that her cancellation was successfully processed and that she would not be subject to any additional charges.

416.     Thereafter, TSI continued to charge Ms. Irving additional fees, but when TSI was unable to charge her credit card she was also assessed with a supposed late fee.  TSI then sent Ms. Irving's account to collections.

417.     Ms. Irving did not approve, authorize or agree to any charges following her cancellation, and any attempt to charge her or collect any fees from Ms. Irving following her cancellation constitutes unlawful, fraudulent and deceptive practices.

**Plaintiff Merin Jacob**

418.     Plaintiff Merin Jacob became a TSI Gym Member in or around June 2017 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located in New Rochelle, New York.

419.     Ms. Jacob was told she could cancel her membership at any time.

420.     TSI never provided Ms. Jacob with any purported written membership contract and never told Ms. Jacob of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

421.     Ms. Jacob was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

422.     Ms. Jacob never agreed nor was she ever notified that she had to pay for an additional days of membership, or any other charges or fees, once she cancelled her TSI gym membership.

423.     In or around January 2018, Ms. Jacob called the New Rochelle NYSC branch and informed a TSI agent that she was canceling her membership.  The TSI agent told Ms. Jacob that she needed to cancel her membership in person.

424.     Ms. Jacob then visited the New Rochelle NYSC branch and informed another TSI agent, Mike Prestano, that she was cancelling her membership.  Mr. Prestano stated that Ms.

Jacob's membership would be cancelled in 45 days and then provided Ms. Jacob with a blank sheet of paper and told Ms. Jacob to write a letter requesting cancellation.

425.    Subsequently, Ms. Jacob noticed that TSI was continuing the charge her credit card.  Ms. Jacob never approved or authorized these charges.

426.    In June 2018, Ms. Jacob called Mr. Prestano regarding TSI's unauthorized charges and told Ms. Jacob that her membership would be cancelled right away.  However, TSI continued to charge Ms. Jacob without her authorization.

427.    Subsequently, Ms. Jacob called the New Rochelle NYSC location regarding the unauthorized charges.  Several TSI representatives told Ms. Jacob that TSI would not refund her for the unauthorized charges.

428.    Ms. Jacob then filed a complaint with the Better Business Bureau.

429.    TSI only partially refunded Ms. Jacob for the unauthorized charges.

**Plaintiff Vaibhav Kajla**

430.    Plaintiff Vaibhav Kajla's parents, Sanjay and Shahi Kajla, became TSI Gym Members in or around 2016 after Mr. Kajli agreed to membership terms with Michael Krick, a TSI agent at one of Defendants' NYSC gyms located Colonia, New Jersey.

431.    Mr. Kajla was told his parents' memberships could be cancelled at any time.

432.    Mr. Kajla never agreed nor was he ever notified that he had to pay for an additional days of membership, or any other charges or fees, once his parents' TSI gym memberships were cancelled.

433.    TSI never provided Mr. Kajla with any purported written membership contract(s) related to his parents' memberships and Mr. Kajla was never told of any additional charges or

fees he would be obligated to pay after providing notice of cancellation of his parents' memberships.

434. Mr. Kajla was instructed to sign an electronic pad in order for his parents to become TSI Gym Members and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he or his parents agreed to any other terms related to his parents' memberships.

435. The electronic pad Mr. Kajla signed did not display any contract terms and only contained a small area for Mr. Kajla to place his signature.

436. Mr. Kajla never agreed nor was he ever notified that he had to pay for any additional days of membership, or any other charges or fees, once his parents' TSI gym memberships were cancelled.

437. In or around January 2017, Mr. Kajla noticed that TSI had charge his credit card for annual fees related to his parents' memberships. Mr. Kajla then called the Colonia NYSC location to dispute the annual fees charged to his credit card and a TSI agent told Mr. Kajla that TSI would not refund him for the annual fees. As a result, Mr. Kajla informed the TSI agent on the call that he was cancelling his parents' memberships.

438. Subsequently, Mr. Kajla noticed that TSI was continuing the charge his credit card related to his parents' memberships. Mr. Kajla never approved or authorized these charges.

439. TSI never refunded Mr. Kajla for the unauthorized charges.

**Plaintiff Anna Kozikowska**

440. Plaintiff Anna Kozikowska became a TSI Gym Member in or around April 2017 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located in Glendale, New York.

441.     Ms. Kozikowska was told she could cancel her membership at any time.

442.     Ms. Kozikowska never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she cancelled her TSI gym membership.

443.     TSI never provided Ms. Kozikowska with any purported written membership contract and never told Ms. Kozikowska of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

444.     Ms. Kozikowska was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

445.     The electronic pad Ms. Kozikowska signed did not display any contract terms and only contained a small area for Ms. Kozikowska to place her signature.

446.     In or around January 2017, Ms. Kozikowska underwent surgery and could not utilize the Glendale NYSC branch.  Thus, Ms. Kozikowska requested that TSI freeze all charges to her account and was told by a TSI agent that her account would be frozen.  However, TSI continued to charge Ms. Kozikowska's credit card.

447.     In or around June 2017, Ms. Kozikowska called the Glendale NYSC branch and informed Samantha, a TSI agent, that she was cancelling her TSI membership because TSI continued to charge her account while she was recovering from her surgery.

448.     Samantha refused to cancel Ms. Kozikowska's membership and told Ms. Kozikowska that TSI would continue to charge her account.

449.      Subsequently, Ms. Kozikowska called TSI's corporate office and informed a TSI representative that she was cancelling her membership.  The TSI representative refused to cancel

Ms. Kozikowska's membership and threatened to send any supposed passed due payments to a collections agency.

450. Subsequently, Ms. Kozikowska noticed that TSI was continuing the charge her credit card. Ms. Kozikowska never approved or authorized these charges.

451. Ms. Kozikowska called the Glendale NYSC branch to complain about TSI's unauthorized charges.

452. TSI never refunded Ms. Kozikowska for the unauthorized charges.

**Plaintiffs Nicole and Marek Kulisek**

453. Plaintiffs Nicole and Marek Kulisek became TSI Gym Members in or around January 2018 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located at 885 Second Avenue, New York, New York 10017.

454. Mr. and Ms. Kulisek were told they could cancel their memberships at any time.

455. Mr. and Ms. Kulisek never agreed nor was they ever notified that they had to pay for an additional days of membership, or any other charges or fees, once they canceled their TSI gym memberships.

456. TSI never provided Mr. and Ms. Kulisek with any purported written membership contract and never told Mr. and Ms. Kulisek of any additional charges or fees they would be obligated to pay after providing notice of cancellation.

457. Mr. and Ms. Kulisek were instructed to sign an electronic pad in order to become TSI Gym Members and were never told that their signatures would be superimposed onto any contract or used for any purpose such as to say they agreed to any other terms.

458. The electronic pad Mr. and Ms. Kulisek signed did not display any contract terms and only contained a small area for them to place their signatures.

459.     Mr. and Ms. Kulisek never agreed nor were they ever notified that they had to pay for an additional days of membership, or any other charges or fees, once they cancelled their TSI gym memberships.

460.     In or around September 2018, Mr. and Ms. Kulisek called, emailed and visited the Second Avenue NYSC branch and informed TSI agents, including Nick Cato, that they were canceling their TSI membership because they were moving outside of TSI's service area.

461.     In or around October 2018, Mr. and Ms. Kulisek noticed that TSI was continuing the charge their credit card.  Mr. and Ms. Kulisek never approved or authorized these charges.

462.     Mr. and Ms. Kulisek then called the Second Avenue NYSC location and spoke with to Mr. Cato regarding the unauthorized charges and provided Mr. Cato with a copy of their lease as proof that they had moved outside of TSI's service area.

463.     A few weeks later, TSI sent Mr. and Ms. Kulisek a promotional email in an attempt to have them rejoin as a TSI member.  Mr. and Ms. Kulisek responded to the email and outlined the situation regarding the unauthorized charges.  Wayne Richards, a TSI agent, responded stating that Mr. and Ms. Kulisek did not cancel properly and TSI would not refund the unauthorized charges.

464.     TSI never refunded Mr. and Ms. Kulisek for the unauthorized charges.

 **Plaintiff Christopher Leaman**

465.     Plaintiff Christopher Leaman became a TSI Gym Member in or around November 2017 after agreeing to membership terms with a TSI agent at one of Defendants' BSC gyms located at 695 Atlantic Ave, Boston, Massachusetts 02111.

466.     TSI never provided Mr. Leaman with any purported written membership contract or otherwise informed Mr. Leaman of any additional charges or fees he would be obligated to pay after providing notice of cancellation.

467.     In or around February 2018, Mr. Leaman called the Atlantic Avenue BSC branch and informed a TSI representative that he was cancelling his membership.  The TSI agent responded that Mr. Leaman could not cancel his membership over the phone and needed to cancel in person.

468.     On or around February 28, 2018, Mr. Leaman went in person to the Atlantic Avenue BSC branch between 9:30 a.m. and 11:00 a.m. and informed another TSI agent working at the front desk that he was cancelling his membership.  A male TSI agent then told Mr. Leman that his membership was cancelled but refused to provide Mr. Leaman with a receipt confirming the cancellation.

469.     TSI continued to charge Mr. Leaman's credit card for months after he cancelled his membership.  Mr. Leman never authorized TSI's continued charges.

470.     On or around August 2, 2018, Mr. Leaman called Atlantic Avenue BSC location and spoke Patrick, a TSI agent, about the unauthorized charges.  Patrick then told Mr. Leaman that he could cancel his membership over the phone and that he would email Mr. Leaman an electronic copy of a confirmation receipt.

471.     Subsequently, Mr. Leaman requested that TSI refund him for the same amount as the unauthorized charges.  Patrick responded that TSI would not refund Mr. Leaman unless had a receipt reflecting that he had previously cancelled his membership.

**Plaintiff Chistopher Lemetre**

472.     Plaintiff Christopher Lemetre became a TSI Gym Member in or around October 2015 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located in Park Slope, Brooklyn.

473.     Dr. Lemetre was told he could cancel his membership at any time without any additional charges or fees.

474.     In September 2016, Dr. Lemetre called the gym location to cancel his membership and was told to email the gym's manager, Jonathan Marino.  Dr. Lemtre then emailed Mr. Marino and informed him that he was cancelling his membership.

475.     In or around September 2016, Dr. Lemetre's wife, who was also a member of the same gym location, also attempted to cancel their memberships by phone but was told she could only cancel in-person at the gym location.

476.     In or around September 2016, Dr. Lemetre's wife went into the gym to cancel both of their memberships.

477.     Dr. Lemetre's wife specifically asked the TSI agent assisting her whether she needed any cancellation receipt or any other document to confirm that the memberships were cancelled, but was told she did not and that their memberships would be cancelled.

478.     Thereafter, TSI charged substantial additional charges and fees to Dr. Lemetre's credit card.  Dr. Lemetre never authorized TSI's continued charges.

479.     Dr. Lemetre disputed the charges with his bank, but the bank was unable to refund the charged amounts.  Dr. Lemetre put a stop-payment order on any future charges from TSI.

480.     Dr. Lemetre then attempted to contact NYSC several times through the "contact us" link on the website and other means, one of them being a letter drafted by a lawyer helping on the matter in May 2017, but those communications went unanswered.

481.     Dr. Lemetre also attempted to contact NYSC regarding these fraudulent charges through the email address of Mr. Marino, but the manager turned out to no longer be working at that location.

482.     Thereafter, in or around June 2017, the new manager of the gym location, Wanda Dryer, contacted Dr. Lemetre and told him that his membership was about to expire and had an outstanding balance, including late fees.

483.     Upon information and belief, TSI had never cancelled Dr. Lemetre's membership and considered him as owing all the past due amount that had not been paid after he put the stop-payment order with his credit card.

484.     At that point, given that Dr. Lemetre was finally speaking to someone at TSI, he explained that he had cancelled his membership many months before and had continued to be charged.  However, the manager said to Dr. Lemetre that she could not see any evidence that he ever attempted to cancel his membership and would not refund him any amounts and insisted on the late payments.

485.     Finally, after posting a complaint with the Better Business Bureau, TSI, through contacts with Ms. Dryer as well as Tiffany Loughery and Laurence Stepansky, agreed to cancel Dr. Lemetre's membership, but TSI has refused to reimburse amounts Dr. Lemetre paid after he initially attempted to cancel and was told that his cancellation had been effective.

486.     Dr. Lemetre was fraudulently charged hundreds of dollars by TSI after he gave notification, both personally and through his wife, to cancel his membership.

**Plaintiff Jacob Levin**

487.    Plaintiff Jacob Levin became a TSI Gym Member in or around September 2016 after agreeing to membership terms with a TSI agent at one of Defendants' BSC gyms located at 201 Brookline Avenue, Boston, Massachusetts 02115.

488.    Mr. Levin was told he could cancel his membership at any time.

489.    TSI never provided Mr. Levin with any purported written membership contract, and never told Mr. Levin of any additional charges or fees he would be obligated to pay after providing notice of cancellation.

490.    Mr. Levin was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

491.    The electronic pad Mr. Levin signed did not display any contract terms and only contained a small area for Mr. Levin to place his signature.

492.    Mr. Levin never agreed nor was he ever notified that he had to pay for any additional days of membership, or any other charges or fees, once he cancelled his TSI gym membership.

493.    In or around November 2016, Mr. Levin visited the Brookline BSC branch and informed a TSI agent that he was cancelling his membership.  The TSI agent told Mr. Levin that he needed to provide TSI with notice of his cancellation in writing.

494.    Subsequently, Mr. Levin noticed that TSI was continuing the charge his credit card.  Mr. Levin never approved or authorized these charges.

495.     As a result of TSI continuing to charge him without authorization, Mr. Levin was forced to cancel his credit card.  However, TSI continued to charge Mr. Levin and eventually retained a collections agency to recover Mr. Levin's supposed unpaid balance.

496.     After the collections agency attempted to contact him on multiple occasions, Mr. Levin called TSI's corporate office to complain.  A TSI representative working at the corporate office told Mr. Levin that there was nothing the corporate office could do to address Mr. Levin's complaint and instructed him to call the Brookline location.

497.     When Mr. Levin contacted the Brookline location, a TSI representative told Mr. Levin that there was nothing the Brookline BSC location could do and that he needed to contact TSI's corporate office.

498.     TSI never refunded Mr. Levin for the unauthorized charges.

**Plaintiff Michael Lord**

499.     Plaintiff Michael Lord became a TSI Gym Member in or around June 2017.

500.     Mr. Lord met with a TSI sales representative at a NYSC gym located in Greenwich, Connecticut.

501.     The TSI sales representative told Mr. Lord that he would be charged a monthly fee for his membership but that he could cancel his membership at any time.

502.     Mr. Lord was specifically told he would not be subject to any additional fees or charges after he cancelled his membership or for cancelling his membership, and was not told he needed to cancel in any particularly prescribed manner or his cancellation would be ineffective.

503.     In or about August 2017, Mr. Lord called the Greenwich NYSC location and asked a male TSI agent to "freeze" his membership.  The TSI agent took Mr. Lord's name,

phone number and email address and assured him that he would not be billed again, other than a $15 per month "freeze" fee.

504.   In early September 2017, Mr. Lord checked his credit card statement and noticed that TSI billed for $47.85, which was a full monthly membership charge.   Mr. Lord complained about this conduct to the Better Business Bureau, and TSI admitted that these charges were improper and refunded the charges.

505.   Mr. Lord un-froze his membership for the month of December as he was home for the holidays.

506.   In January 2018, Mr. Lord sought to cancel his NYSC membership entirely.

507.   Mr. Lord called the Greenwich NYSC location and told a TSI representative he wanted to cancel his membership.

508.   While Mr. Lord's membership was ultimately cancelled, TSI continued to charge Mr. Lord additional fees after his cancellation request, and Mr. Lord never agreed to or authorized these charges.

**Plaintiff Joseph Ott**

509.   Plaintiff Joseph Ott was a TSI Gym Member for many years.

510.   Mr. Ott was a member of the PSC located in Highpoint, Pennsylvania.

511.   When he became a member, he met with a TSI sales person who informed him that he would be obligated to pay a monthly fee for gym membership.

512.   Mr. Ott was told he could cancel his membership at any time.

513.   Mr. Ott was never told there would be any additional charges following his notice of cancellation.

514.     Mr. Ott was not told that his cancellation had to follow any particular form or process in order for it to be effective.

515.     In or about August 2017, Mr. Ott decided to cancel his membership because he was moving out of state.

516.     Mr. Ott visited the Highpoint PSC location and met with the manager and said he wanted to cancel his membership.  The manager told Mr. Ott he could not cancel his membership in-person and he had to send a certified letter to confirm his cancellation.

517.     Although Mr. Ott never agreed to this, he nonetheless sent the certified letter as he was directed.  Initially, TSI appeared to cancel his membership and stopped charging fees to his credit card.

518.     Shortly thereafter, in or around January 2018, TSI again started charging fees to Mr. Ott's credit card without his authorization or approval.

519.     Mr. Ott then filed a complaint with the Better Business Bureau and in response TSI admitted that it had improperly charged Mr. Ott's account.  While certain of these charges were ultimately refunded, not all the charges were refunded.

520.     Moreover, TSI's fraudulent conduct caused significant cost and inconvenience to Mr. Ott.

**Plaintiff Hatshepsut Pakeman-Symister**

521.     Plaintiff Hatshepsut Pakeman-Symister became a TSI Gym Member in or around June 2015 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located in Manhattan, New York.

522.     Ms. Pakeman-Symister was told she could cancel her membership at any time.

523.     TSI never provided Ms. Pakeman-Symister with any purported written membership contract and Ms. Pakeman-Symister was never told of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

524.     Ms. Pakeman-Symister was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

525.     The electronic pad Ms. Pakeman-Symister signed did not display any contract terms and only contained a small area for Ms. Pakeman-Symister to place her signature.

526.     Ms. Pakeman-Symister never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she cancelled her TSI gym membership.

527.     In or around September 2016, Ms. Pakeman-Symister visited a TSI gym location on Midtown, Manhattan and informed a TSI agent that she was cancelling her membership. The TSI agent told Ms. Pakeman-Symister that her membership would be cancelled.

528.     Ms. Pakeman-Symister then asked if TSI would provide her with written confirmation of her cancellation but the TSI agent told her that she did not have to worry about TSI processing her cancellation. However, Ms. Pakeman-Symister subsequently sent two emails to the NYSC gym location to confirm her cancellation, but TSI never responded.

529.     TSI continued to charge Ms. Pakeman-Symister's credit card without her authorization.

530.     In or around early 2018, Ms. Pakeman-Symister noticed that TSI was continuing to charge her credit card. Ms. Pakeman-Symister never approved or authorized these charges.

531.     On May 15 and May 22, 2018, Kristina Ryan, a TSI agent, emailed Ms. Pakeman-Symister stating that she owed TSI a past due amount of $159.96.  On May 23, 2018, Ms. Pakeman-Symister responded that she cancelled her membership two years ago and that TSI should not have been charging her.

532.     TSI never refunded Ms. Pakeman-Symister for the unauthorized charges.

**Plaintiff Lee Presser**

533.     Plaintiff Lee Presser was a TSI Gym Member of the NYSC located in Somers/Baldwin Place, New York.  Mr. Presser paid monthly membership dues and also paid for childcare services.

534.     Mr. Presser was told he could cancel his membership at any time and was not told he would be subject to any additional charges after cancellation.

535.     In or around July 2014, Mr. Presser visited this NYSC location and informed the manager that he wanted to cancel his membership and childcare services.

536.     The manager sat Mr. Presser down at a desk, typed on a computer keyboard (as Mr. Presser understood, he was accessing Mr. Presser's account to effectuate the cancellation request) and told Mr. Presser that he would be billed one additional time and that his membership and childcare services would be cancelled effective at the end of August 2014.

537.     The manager told Mr. Presser that they do not print out any documentation of cancellation requests, but that the cancellation was fully processed and that Mr. Presser did not need to do anything further.

538.     Despite the manager's assurances, TSI continued to bill Mr. Presser $68.94 per month for the next 13 months, for a total of $896.22.  Mr. Presser failed to notice these charges only because the credit card he used for his TSI membership he also used for his business

expenses, so the card had substantial monthly charges. Apparently, Mr. Presser's childcare services had been cancelled, but his membership had not.

539.    Mr. Presser then complained about these charges to the new manager of the NYSC location, Jessica Beck. Ms. Beck cancelled Mr. Presser's gym membership and apparently escalated Mr. Presser's complaints to TSI's corporate level.

540.    Mr. Presser then received an email from a TSI member services representative named Katie Baker. Ms. Baker apologized for the situation but stated "we have no documentation stating that your membership should have been cancelled" and that as a result "no refund can be processed."

541.    Incredibly, Ms. Baker also stated that TSI's records showed that Mr. Presser had scanned in and used the gym in April 2015, and that this usage undermined his claim that he had cancelled his membership.

542.    Upon information and belief, Ms. Baker either fabricated this usage data to Mr. Presser, or someone else at TSI had fabricated this data. In either event, Ms. Baker was conveying false and fabricated information.

543.    Mr. Presser then tried to contact Ms. Baker by phone, but she did not answer or return his calls. As such, Mr. Presser responded to the email challenging her so-called data showing that he had used the gym in April 2015.

544.    Ms. Baker never responded to Mr. Presser's email and would not answer or otherwise return any of Mr. Presser's attempts to reach her by phone.

545.    Mr. Presser filed a complaint with the Better Business Bureau and Ms. Baker then contacted Mr. Presser by phone. Mr. Presser asked Ms. Baker for security footage of the day in

April 2015 when TSI claimed Mr. Presser used the gym. Ms. Baker said she would only release the security footage to Mr. Presser's attorney.

546. Mr. Presser asked Ms. Baker how the person who was supposedly him scanned into the gym, and Ms. Baker said it was done through a key tag. However, Mr. Presser had not used a key tag to scan into the gym in many years, as he had an app on his phone called FidMe, which stored key tag numbers and allowed him to dispose of all his key tags.

547. To date, TSI has refused to refund the obviously fraudulent and improper charges following Mr. Presser's cancellation request.

548. Mr. Presser never agreed to or authorized any charges to his credit card following his cancellation request, and any such charges are fraudulent and improper.

**Plaintiff Jessica Raimi**

549. Plaintiff Jessica Raimi became a TSI Gym Member before 2010 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located on Reade Street in Tribeca, Manhattan.

550. Ms. Raimi was a month-to-month member and was permitted to cancel her membership at any time.

551. In or around April 2015, TSI closed the Reade Street branch and moved Ms. Raimi's membership to a different branch which she did not want to use.

552. On or about April 27, 2015, Ms. Raimi visited the Reade Street branch before it closed, spoke to a TSI representative and stated that she wanted to cancel her membership. The TSI representative typed on a computer (Ms. Raimi presumes he was accessing her account through the computer software) and then told Ms. Raimi unequivocally that her membership was

cancelled.  Ms. Raimi was not given any documentation to prove that her membership was cancelled.

553. Thereafter, TSI continued to attempt to charge Ms. Raimi for monthly membership dues, but Ms. Raimi disputed the charges with her credit card company.

554. In early July 2015, Ms. Raimi received calls from TSI representatives demanding payment for supposed past due amounts that accrued after Ms. Raimi had cancelled her membership.  Ms. Raimi explained that her membership was cancelled, but the TSI representative denied that she had cancelled her membership.

555. The TSI representative transferred Ms. Raimi to a supervisor, and she explained the situation again and the supervisor said that he would cancel her membership as of that day but that she still owed two months' membership dues.  Ms. Raimi did not agree.

556. Ms. Raimi was then passed to another supervisor, Donald, and she again explained the situation.  Donald told Ms. Raimi that she owed nothing at that point and that he would email her confirmation.  The email Donald sent Ms. Raimi states that her membership was cancelled as of July 9, 2015, and said her final payment due was $0.

557. However, shortly thereafter, Ms. Raimi then received another call from the first TSI representative she had spoken to on the previous phone call, and he stated that TSI was still seeking payment for two months' membership dues.

558. Ms. Raimi tried to explain the situation and the TSI representative transferred Ms. Raimi to a supervisor named Tiffany.  Tiffany claimed that Ms. Raimi still owed the two months' membership dues, even though the email from Donald listed a final payment due of $0.

559. Ultimately, TSI sent the account to collections, and a collections agency harassed Ms. Raimi for payment of these membership fees on TSI's behalf.

560.	Eventually, to avoid being harassed, Ms. Raimi paid the amount that was claimed to be owed, even though these were fraudulent and improper charges.

**Plaintiff Samilys Rodriguez**

561.	Plaintiff Samilys Rodriguez became a TSI Gym Member in or around 2016.

562.	Ms. Rodriguez signed up as a "Passport" member, supposedly meaning she would be permitted to access any TSI gym location at any time.

563.	Ms. Rodriguez was told she could cancel her membership at any time.

564.	Ms. Rodriguez's primary gyms were the BSC gyms located in Dorchester and on Beacon Street in Boston.

565.	In July 2017, Ms. Rodrguez visited the Beacon Street BSC location and informed the front desk staff person that she wanted to cancel her membership.

566.	The front desk person asked for Ms. Rodriguez's BSC membership card and Ms, Rodriguez handed her the BSC key tag that she used to scan into the gym.

567.	The front desk person then scanned the BSC membership card, typed into the computer and informed Ms. Rodirguez that she was "all set."

568.	Ms. Rodriguez trusted that this front desk person actually cancelled her membership and she left the BSC location and discarded her BSC membership key tag.

569.	Ms. Rodriguez then stopped using or attending BSC.

570.	In early February 2018, Ms. Rodriguez noticed for the first time that TSI had charged a membership fee to her credit card.  Ms. Rodriguez then looked further and noticed that TSI never cancelled her membership and had continued to charge her regularly after she cancelled.

571.     Moreover, even though she had cancelled her membership and should not have been subject to any additional charges at all, TSI added insult to injury by unilaterally increasing her membership rate such that while she had previously paid $59.95 per month, many of the improper charges were for $69.95.

572.     Immediately, Ms. Rodriguez called both the Dorchester and Beacon Street locations to verify cancellation of her membership.  The TSI representatives she spoke to at both locations said they had no record of her account being cancelled.

573.     Ms. Rodriguez then contacted a TSI customer service manager named Charlene and informed Charlene that she had cancelled her membership many months previously in July 2017 and that her credit card continued to be improperly charged.  Charlene informed Ms. Rodriguez that her membership would be cancelled immediately but that she would not be entitled to any refund for the past charges.

574.     Despite the fact that Charlene informed Ms. Rodriguez that her cancellation would be processed immediately, TSI continued to charge Ms. Rodriguez additional membership fees even after that date.

575.     Ms. Rodriguez then went in person to the Beacon Street location and spoke to the General Manager, Elizabeth Weismann.  Ms. Weismann said that there was nothing she or anyone else at BSC could do to rectify the problem.

576.     Ms. Rodriguez complained about this conduct to the Better Business Bureau.  In response, TSI said there was no record of Ms. Rodriguez's cancellation (which, of course, was the entire problem) and without any proof the company was not willing to offer any refund other than to waive the February charge and a supposed cancellation fee.

**Plaintiff Duygucan Sahin**

577.     Plaintiff Duygucan Sahin became a TSI Gym Member in or around January 2017 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located at 70 Station Landing, Medford, Massachusetts 02155.

578.     Ms. Sahin was told she could cancel her membership at any time.

579.     TSI never provided Ms. Sahin with any purported written membership contract and was told that TSI no longer provides members with written contracts.  Ms. Sahin was also never told of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

580.     Ms. Sahin was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

581.     The electronic pad Ms. Sahin signed did not display any contract terms and only contained a small area for Ms. Sahin to place her signature.

582.     In or around November 2017, Ms. Sahin called the Station Landing branch and informed a TSI agent that she was cancelling her membership.  The TSI agent told Ms. Sahin that her membership would be cancelled in 45 days.

583.     In or around December 2017, Mr. Sahin noticed that TSI was continuing the charge her credit card.  Ms. Sahin never approved or authorized these charges.

584.     Ms. Sahin and her husband, Steve Novak, called the Station Landing branch to complain about TSI's unauthorized charges and a TSI representative told them that there was no record that Ms. Sahin cancelled her membership.  Mr. Novak asked to speak with a manager but

was forced to leave a voice messaged after he was told that a manger was not available. No TSI employee answered Mr. Novak's voice message.

585. A few days later, Mr. Novak called TSI headquarters and was again told that there was no record of Ms. Sahin cancelling her membership. When he asked to speak with a manager, Mr. Novak was told that he needed to contact the gym where Ms. Sahin signed up to be a member and that the corporate office did not manage individual locations.

586. Subsequently, Mr. Novak again called the Station Landing branch regarding TSI's unauthorized charges and requested that Ms. Sahin's cancellation request be processed.

587. Two weeks later, Mr. Novak visited the Station Landing branch to address TSI's unauthorized charges but was turned away after being told that he would not be able to meet with the General Manager.

588. Mr. Novak and Ms. Sahin then emailed the Station Landing location to complain about the unauthorized charges. Dan Smith, a TSI Business Director, responded that TSI would reduce the amount TSI charged her related to the cancellation of her membership.

589. TSI never fully refunded Ms. Sahin for the unauthorized charges.

**Plaintiff Wendy Schoeler**

590. Plaintiff Wendy Schoeler became a TSI Gym Member in or around May 17, 2017 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located on Astor Place in New York City.

591. On that day, Ms. Schoeler went to the Astor Place location to use a one day complimentary pass. When Ms. Schoeler walked into the gym, a TSI membership salesperson named Katya Mendillo greeted her and told her she could join the gym for 10 days for just $1.00.

592.     In response, Ms. Schoeler explained that she was hesitant because she had previously been a member of NYSC and several years earlier had a very bad experience trying to cancel her membership.

593.     Ms. Mendillo explained and promised to Ms. Schoeler that she could cancel her membership at any time and for any reason during the 10-day period.

594.     Based on this promise and representation from the TSI membership salesperson, Ms. Schoeler agreed to become a TSI Gym Member.

595.     Ms. Schoeler provided her credit card information to Ms. Mendillo, and Ms. Schoeler was instructed to sign an electronic pad to complete the processing of her membership. Ms. Schoeler was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

596.     The electronic pad Ms. Schoeler signed did not display any contract terms and only contained a small area for Ms. Schoeler to place her signature.

597.     TSI never provided Ms. Schoeler with any purported written membership contract.

598.     Ms. Schoeler never agreed nor was she ever notified that she had to pay for any additional days of membership once she cancelled her TSI gym membership.

599.     Ms. Schoeler never agreed nor was she ever notified that she had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail" and to the contrary was told that she could go into any gym location to cancel at any time.

600.     During that first day using the Astor Place location, Ms. Schoeler knew she was going to cancel her membership as the club was dirty and loud and the employees were obnoxious.

601.     After using the gym, Ms. Schoeler emailed Ms. Mendillo and explained that she wanted to cancel her membership.  Ms. Mendillo responded that Ms. Schoeler could go into any gym location to cancel her membership.

602.     On May 26, 2017, Ms. Schoeler went into the NYSC location on 16th Street and 8th Avenue and stated that she wanted to cancel her membership.  Ms. Schoeler was introduced to the manager of the gym, and he took Ms. Schoeler into an office and pulled up her account information on a computer.

603.     Ms. Schoeler explained to the manager that she wanted to cancel her account. The manager told her that he had cancelled her account.  Given the problems she had cancelling her NYSC account previously, Ms. Schoeler asked him several times to confirm that there were no outstanding issues, that her account was cancelled and that there would be no additional charges.  The manager confirmed that her account was cancelled and that there would be no additional charges.

604.     In June 1, 2018, Ms. Schoeler's debit card was fraudulently and improperly charged by TSI for the full monthly membership fee.  Ms. Schoeler never agreed to, approved or authorized this charge.

605.     Ms. Schoeler then emailed TSI asking for assistance with these improper charges, but received no response.

606.     Ms. Schoeler filed a complaint with the Better Business Bureau to dispute the charges against her and TSI's cancellation practices, and TSI refused to refund the June membership charge and also stated that Ms. Schoeler was responsible for additional cancellation-related charges that she never agreed to pay.

607.     Ms. Schoeler then called the NYSC gym location on 16th Street and 8th Avenue where the manager had cancelled her membership to request written confirmation that her membership was cancelled and that she did not need to pay any additional charges.  Ms. Schoeler spoke to someone named Kimberly – who said she was the manager – and she told Ms. Schoeler that no cancellation had been processed for her account on any date.

608.     Upon information and belief, the manager who Ms. Schoeler previously spoke to on May 26, 2017 never actually cancelled Ms. Schoeler's membership account per her request or per his representation to her that he had done so.

609.     Also on Ms. Schoeler's phone call with Kimberly, Kimberly informed her that it is TSI policy to never put any cancellation information in writing.  Accordingly, if a dispute arises, there is no way to know through any records to know who cancelled and when.

610.     While Kimberly informed Ms. Schoeler that she would process Ms. Schoeler's cancellation request, based on the policy she informed Ms. Schoeler about, Ms. Schoeler did not have any documented confirmation that he account had been cancelled.

611.     Ms. Schoeler only received written confirmation that her membership was cancelled during communications through the Better Business Bureau, though in those same communications TSI refused to refund the fraudulent and improper charges to Ms. Schoeler after she had previously given notice of her cancellation.

612.     Ms. Schoeler then placed a stop payment order with her bank to avoid any additional fraudulent and improper charges from TSI.

**Plaintiff Joseph Singletary**

613.    Plaintiff Joseph Singletary became a TSI Gym Member on or about October 23, 2018 after agreeing to membership terms with a TSI agent at a BSC located in Waltham, Massachusetts.

614.    Mr. Singletary was told he would be charged $1 to join, and there would not be any additional charges until November 23, 2018, at which point he would be charged a $69 membership fee.

615.    Mr. Singletary was told he could cancel his membership at any time, and that there would be no cancellation or any other charges.

616.    Mr. Singletary was instructed to sign an electronic pad and was never told his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

617.    The electronic pad Mr. Singletary signed did not display any contract terms and only contained a small area for Mr. Singletary to place his signature.

618.    Mr. Singletary never agreed nor was he ever notified that he had to pay for any additional days of membership once he cancelled his TSI gym membership.

619.    In or around late October/early November 2018, Mr. Singletary decided to cancel his membership once he learned that he needed knee surgery.

620.    To cancel, Mr. Singletary called the BSC branch and told the TSI agent he needed to cancel his membership due to his upcoming surgery.  The TSI agent told him his membership was cancelled, but told him he would be subject to additional membership charges.

621.     On November 2, 2018, TSI charged Mr. Singletary $69.  Mr. Singletary never agreed to or authorized this charge.  Thereafter, TSI attempted to charge Mr. Singletary additional fees which he also never agreed to or authorized.

**Plaintiff Erin Mackey Siraguse**

622.     Plaintiff Erin Mackey Siraguse became a TSI Gym Member in 2014.

623.     Ms. Siraguse signed up in-person at the WSC location in Fairfax, Virginia.

624.     Mr. Siraguse was told she could cancel her membership at any time.

625.     Mr. Siraguse was never told about any cancellation charges or fees.

626.     Mr. Siraguse was never told about any particular method she needed to follow to cancel her membership.

627.     In October 2014, Ms. Siraguse cancelled WSC membership in-person with the manager at the Fairfax WSC location.  The manager told Ms. Siraguse that her membership was cancelled.

628.     However, TSI continued to charge Ms. Siraguse $50 per month for membership dues even though she had cancelled her membership.

629.     As a result, Ms. Siraguse went to the Fairfax WSC location on several occasions to address these continued charges, but was always told he she needed to speak to a manager, and the manager was never there.

630.     Ms. Siraguse eventually called a WSC customer service phone number and following many telephone calls was eventually told by a TSI representative that the issue had been resolved, though no refunds were ever issued and the charges continued.

631.    On or about April 3, 2015, Ms. Siraguse then went to the Glendale WSC location and complained further to the manager.  The manager confirmed that Ms. Siraguse's membership would be terminated.

632.    However, even thereafter, TSI continued to charge Ms. Siraguse additional charges that she never agreed to, authorized or approved.

**Plaintiff Joseph Smith**

633.    Plaintiff Joseph Smith became a TSI Gym Member in or around May 2017 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located in the Dorchester area of Boston, Massachusetts.

634.    Mr. Smith was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

635.    The electronic pad Mr. Smith signed did not display any contract terms and only contained a small area for Mr. Smith to place his signature.

636.    Mr. Smith was told he could cancel his membership at any time, and was never told about, and never agreed to, any additional fees or charges upon or following cancellation.

637.    Mr. Smith also never agreed nor was he ever notified that he had to obtain any particular process or method that he had to follow in order to effectuate the cancellation of his membership.

638.    TSI never provided Mr. Smith with any purported written membership contract.

639.    In late May 2017, after being a member for less than a month, Mr. Smith cancelled his membership with BSC through an online portal on TSI's website.  Mr. Smith did not agree to any additional charges.

640.	On May 24, 2017, Mr. Smith received any email from Charlene Slocum, a TSI customer service manager located in Dorchester.  Ms. Slocum confirmed receipt of Mr. Smith's cancellation request, but stated that he would be subject to additional fees if he cancelled and attempted to convince him to merely "freeze" his account for a cost of $15 per month rather than cancel his membership and lose his supposedly favorable membership rate.

641.	Mr. Smith did not agree to the charges and fees Ms. Slocum said would apply, and on May 26, 2017, Mr. Smith asked Ms. Slocum to simply confirm that his membership would be cancelled per his request.  Ms. Slocum responded to Mr. Smith and confirmed that his membership was cancelled and informed him that a separate email confirmation had been sent.

642.	On May 26, 2017, Mr. Smith received an email from TSI confirming that he had cancelled his membership and that he did not owe TSI any additional charges or fees.

643.	Thereafter, TSI continued to charge him additional charges and fees.  Mr. Smith disputed these charges with TSI and was told that he was subject to a 45-day cancellation period during which he would continue to be charged his membership fees.  Mr. Smith never agreed to or authorized these charges.

644.	Moreover, TSI continued to charge Mr. Smith additional fees above and beyond the fraudulent and improper charge for the 45-day period.  Mr. Smith never agreed to or authorized these charges.

645.	Mr. Smith disputed the charges with his credit card company, which credited him for certain of the charges.  To avoid further charges, Mr. Smith asked his credit card to put a stop payment order on any charges from TSI.

646.	Thereafter, TSI threatened to send his account to a collections agency if he did not make payment of the outstanding amounts.

647. Mr. Smith refused to pay these amounts and TSI contracted with a collections agency to harass Mr. Smith for payment at TSI's behest. Eventually, Mr. Smith paid the collections agency simply to stop the harassment.

**Plaintiff Diane Swick**

648. Plaintiff Diane Swick became a TSI Gym Member in or around 2016 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located at the Rosman Center, Garnerville, New York 10923.

649. Ms. Swick was told she could cancel her membership at any time.

650. Ms. Swick was never told of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

651. Ms. Swick was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

652. The electronic pad Ms. Swick signed did not display any contract terms and only contained a small area for Ms. Swick to place her signature.

653. Ms. Swick never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she cancelled her TSI gym membership.

654. In or around April 2016, Ms. Swick visited the Garnerville branch and informed Jared, a TSI agent, that she was cancelling her membership, and Jared told Ms. Swick that her membership would be cancelled.

655. However, TSI continued to charge Ms. Swick's credit card without her authorization.

656. Subsequently, Ms. Swick noticed that TSI was continuing to charge her credit card. Ms. Swick never approved or authorized these charges.

657. TSI never fully refunded Ms. Swick for the unauthorized charges.

**Plaintiff Shannon Sysko**

658. Plaintiff Shannon Sysko became a TSI Gym Member in or around September 2018.

659. Ms. Sysko signed up and enrolled to become a PSC member via an online application and agreed to pay monthly membership fees to use the PSC gym located on Market Street in Philadelphia, Pennsylvania.

660. Ms. Sysko was informed through the online application process that she could cancel her membership at any time.

661. TSI never told Ms. Sysko of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

662. Ms. Sysko never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she canceled her TSI gym membership.

663. In or around October 2018, Ms. Sysko visited the Market Street PSC location and informed a TSI agent that she was canceling her membership. The TSI agent told Ms. Sysko that her membership would be cancelled in 45 days and that she would receive an email confirmation the cancellation of her membership.

664. In or around November 2018, Ms. Sysko noticed that TSI was continuing the charge her credit card. Ms. Sysko never approved or authorized these charges.

665. TSI charged Ms. Sysko's credit card again in December 2018.

666.     On December 2, 2018, Ms. Sysko called the Market Street PSC location and spoke with a TSI agent regarding the unauthorized charges. The TSI agent stated that there was no record that Ms. Sysko cancelled her membership and that he would leave a note for a manager to call Ms. Sysko.

667.     On December 5, 2018, no one at TSI contacted her, so Ms. Sysko again called the Market Street PSC location and spoke to another TSI agent. The TSI agent responded that a manager would get in touch with her.

668.     Later that day, Ms. Sysko visited the Market Street PSC location and spoke to a TSI manager who claimed not to be able to refund her for the unauthorized charges and provided Ms. Sysko with the email address for a different TSI manager who she could contact regarding a refund.

669.     On December 6, 2018, Ms. Sysko emailed the TSI agent she was directed to contact by the manager at the Market Street PSC location. Ms. Sysko has not received a response to her email.

670.     TSI never refunded Ms. Sysko for the unauthorized charges.

**Plaintiffs Alex and Gretchen Treves**

671.     Plaintiffs Alex and Gretchen Treves – who are married – became TSI Gym Members in or around March 2017. Mr. and Ms. Treves were both told they could cancel their memberships at any time and were never informed of any additional charges.

672.     Mr. and Ms. Treves relied on these representations.

673.     When they signed up, Mr. and Ms. Treves signed an electronic pad, which did not display any contract terms and only contained a small area for a signature.

674. Mr. and Ms. Treves never agreed nor were notified that they had to pay any additional fees after cancelling their membership.

675. Mr. and Ms. Treves never agreed nor were they ever notified that they had to cancel their memberships in any particular manner or method.

676. Mr. and Ms. Treves decided to cancel their memberships because they found the BSC locations to be dirty and disgusting.

677. In Summer/Fall 2017, Mr. Treves contacted the BSC location and informed the TSI representative that he and his wife wanted to cancel their memberships. He was told they could cancel their memberships but that they would each be charged a $100 cancellation fee.

678. Mr. Treves attempted to speak to the manager of the BSC location, but the manager did not respond to numerous phone calls and messages.

679. Eventually, Mr. Treves was able to reach the manager of the location. The manager informed Mr. Treves that they were going to charge him and his wife the two cancellation fees. Mr. and Ms. Treves never agreed to or authorized these charges.

680. Mr. and Ms. Treves cancelled their credit card to avoid further charges from TSI. As a result, they had to spend significant time updating all their recurring credit card payments to the new credit card.

681. Mr. Treves contacted the Massachusetts Attorney General's office and the Better Business Bureau regarding these improper and fraudulent charges.

682. As a financial professional, Mr. Treves's time is valuable. Between the numerous calls to the BSC location, his attempt to speak with the manager and his correspondence with the Massachusetts Attorney General's office and the Better Business Bureau, Ms. Treves incurred

significant lost time and inconvenience as a result of TSI's deceptive and fraudulent business practices.

**Plaintiff Emily Wickstrom**

683.     Plaintiff Emily Wickstrom became a TSI Gym Member in 2015 after agreeing to membership terms with a TSI agent at one of Defendants' gyms located on Newbury Street in Boston, Massachusetts.

684.     Ms. Wickstrom was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

685.     The electronic pad Ms. Wickstrom signed did not display any contract terms and only contained a small area for Ms. Wickstrom to place her signature.

686.     Ms. Wickstrom was told she could cancel her membership at any time.

687.     Ms. Wickstrom never agreed nor was she ever notified that she had to obtain a "cancellation receipt" or send "a written notification by certified or registered mail" or engage in any other particular method or process to cancel her membership.

688.     TSI never provided Ms. Wickstrom with any purported written membership contract.

689.     Ms. Wickstrom never agreed nor was she ever notified that she had to pay for any additional charges or fees once she cancelled her TSI gym membership.

690.     In late 2015, Ms. Wickstrom contacted a TSI representative and said she wanted to cancel her membership, but she was told she had to appear in person to cancel her membership.

691.     Thereafter Ms. Wickstrom went to a TSI location and cancelled her membership.

692.     Even after she cancelled her membership, TSI charged her additional fees, including cancellation fees and additional membership dues.  Ms. Wickstrom never agreed, approved or authorized any of these charges.

693.     TSI deceptively and fraudulently charged Ms. Wickstrom these amounts.

**Plaintiff Stephanie Wilson**

694.     Plaintiff Stephanie Wilson became a TSI Gym Member in or around October 4, 2018 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located on 59th Street in Manhattan, New York.

695.     The TSI agent told Ms. Wilson that she was entitled to a 10-day trial period as part of her membership and that she could cancel her membership at any time during the 10-day trial.

696.     TSI never provided Ms. Wilson with any purported written membership contract and never told Ms. Wilson of any additional charges or fees she would be obligated to pay after providing notice of cancellation.

697.     Ms. Wilson was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.

698.     The electronic pad Ms. Wilson signed did not display any contract terms and only contained a small area for Ms. Wilson to place her signature.

699.     Ms. Wilson never agreed nor was she ever notified that she had to pay for any additional days of membership, or any other charges or fees, once she canceled her TSI gym membership.

700.     In or around October 9, 2018, Ms. Wilson visited the 59th Street NYSC branch and informed a TSI agent that she was cancelling her membership.  The TSI agent provided Ms. Wilson with a form that she signed reflecting that TSI would cancel her membership and told Ms. Wilson that her membership was cancelled.

701.     In or around On November 2, 2018, Ms. Wilson noticed that TSI had charged her credit card.  Ms. Wilson never approved or authorized this charge.

702.     On or around November 6, 2018, Ms. Wilson called the 59th Street NYSC branch and informed a TSI agent of the unauthorized charge.  The TSI agent told Ms. Wilson that she was having "buyer's remorse" and that her claim that the charges were unauthorized was false. The TSI agent also told her that she needed to speak with Britney or Robert, TSI managers.

703.     On or around November 7, 2018, Ms. Wilson called the gym again and asked to speak with Britney or Robert.  A TSI agent transferred the call to Britney, and Ms. Wilson informed Britney of the unauthorized charges.  Britney stated that TSI would refund Ms. Wilson for the unauthorized charges and that TSI would not continue to charge her.

704.     On or around November 21, 2018, TSI charged Ms. Wilson for $69.99.  Ms. Wilson did not authorize this charge.

705.     On or around December 5, 2018, Ms. Wilson called the corporate office and spoke with a TSI representative and was informed that she needed to speak with a TSI representative at the location where she signed up to become a member.

706.     On or around December 5, 2018, Ms. Wilson visited TSI's website and submitted a message regarding the unauthorized charges through a contact box on the website.  TSI did not respond to Ms. Wilson's message.

707. On or around, December 7, 2018, Ms. Wilson called the 59th Street NYSC, spoke with Robert and informed him of TSI's unauthorized charges. Robert responded that TSI would refund her for the unauthorized charges.

708. TSI never refunded Ms. Wilson for the unauthorized charges.

**Plaintiff Jenin Younes**

709. Plaintiff Jenin Younes signed up for membership at NYSC in November 2015. She signed up in-person at the NYSC located on 23rd Street & Park Avenue in Manhattan.

710. The TSI sales representative with whom Ms. Younes met did not tell her about any cancellation fee or any other charges due on or after cancellation.

711. Ms. Younes was told she could cancel her membership at any time, and she was not told about any particular process she needed to follow to cancel her membership.

712. Ms. Younes was simply told she needed to pay $50 per month, with $50 down immediately.

713. Upon Ms. Younes' best recollection, she was told to sign an electronic pad to complete her enrollment, and the electronic pad did not contain any contract terms and only had a small place for her to insert her signature.

714. Ms. Younes quickly became dissatisfied with the NYSC located near her apartment (which was the NYSC location she visited most often) because the wifi did not work, the bathrooms were filthy and many of the machines did not work properly. Ms. Younes found NYSC to be far inferior to her prior gym.

715. Ms. Younes wanted to terminate her membership. Ms. Younes both called TSI member services and went to the 23rd Street & Park NYSC location to communicate her

disappointment with the gym and her desire to cancel. She was told she would be charged a $100 termination fee about which they had never informed her.

716.     TSI then charged Ms. Younes fraudulent and improper fees she never authorized or approved.

**Plaintiff Christian Zambrano**

717.     Plaintiff Christian Zambrano became a TSI Gym Member in or around April 2018 after agreeing to membership terms with a TSI agent at one of Defendants' NYSC gyms located at in Oceanside, New York.

718.     Mr. Zambrano was told he could cancel his membership at any time.

719.     TSI never provided Mr. Zambrano with any purported written membership contract, and never told Mr. Zambrano of any additional charges or fees he would be obligated to pay after providing notice of cancellation.

720.     Mr. Zambrano was instructed to sign an electronic pad in order to become a TSI Gym Member and was never told that his signature would be superimposed onto any contract or used for any purpose such as to say he agreed to any other terms.

721.     The electronic pad Mr. Zambrano signed did not display any contract terms and only contained a small area for Mr. Zambrano to place his signature.

722.     Mr. Zambrano never agreed nor was he ever notified that he had to pay for any additional days of membership, or any other charges or fees, once he cancelled his TSI gym membership.

723.     In or around May 2018, Mr. Zambrano informed a TSI agent in the Oceanside NYSC branch that he was cancelling his membership. The TSI agent told Mr. Zambrano that his membership would be cancelled.

724.    On or around August 29, 2018, Mr. Zambrano noticed that TSI was continuing to charge his credit card.  Mr. Zambrano never approved or authorized these charges.

725.    That same day, Mr. Zambrano visited the Oceanside NYSC branch to inquire about TSI's unauthorized charges.  A TSI agent told Mr. Zambrano that his membership was not cancelled and that he needed to speak the manager, Samantha, in order to cancel his membership. The TSI agent also told Mr. Zambrano that Samantha was not present at the Oceanside location at that time.

726.    Subsequently, Mr. Zambrano called TSI's corporate office and a TSI agent told Mr. Zambrano that his membership was never cancelled and that he needed to cancel his membership by speaking with a manager in person.

727.    On September 3, 2018, Mr. Zambrano called the Oceanside NYSC location and was able to speak Samantha.  Samantha informed Mr. Zambrano that she had processed his cancellation request the previous week.  However, TSI continued to charge Mr. Zambrano's credit card without his authorization.

728.    TSI never refunded Mr. Zambrano for the unauthorized charges.

## CLASS ACTION ALLEGATIONS

729.    Plaintiffs bring their claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and on behalf of all other similarly situated persons whose memberships have not been cancelled and/or have been charged fees by TSI following notice of the cancellation of their memberships during the applicable statutory limitation periods (the "Class").

730.    The claims of the Class are the same as or substantially similar to those of Plaintiffs, and the Class, like Plaintiffs, has been subject to the same unlawful conduct.

731.    As a result of Defendants' conduct as alleged herein, Defendants have engaged in violations of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA, NJCFA, RIUTPCPA, VCPA and MGL 93A as well as conversion.

732.    Defendants' violations of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA, NJCFA, RIUTPCPA, VCPA and MGL 93A as well as their conversion have been willful, repeated, knowing, intentional and without a good faith basis, and have significantly damaged Plaintiffs and the Class.

733.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the Class for the full amount of any economic and monetary loss suffered by Plaintiffs and the Class, and any and all other actual, statutory or other applicable damages.

734.    Certification of the Class's claims as a class action is the most efficient and economical means of resolving the questions of law and fact common to Plaintiffs' claims and the claims of the Class.

735.    Plaintiffs have standing to seek such relief because of the adverse effect that Defendants' unlawful conduct has had on them individually and on members of the Class.

736.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

737.    Certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Class and Defendants.

738.    Plaintiffs' claims raise questions of law and fact common to the Class.  Among these questions are:

- Whether Plaintiffs and the Class agreed to be bound by any purported policies or contract terms regarding the cancellation of their memberships with Defendants;

- Whether Defendants' agent(s) provided Plaintiffs and the Class with a physical or electronic copy of Defendants' written membership agreements prior to signing up Plaintiffs and the Class as TSI Gym Members;

- Whether Defendants engaged in conversion by charging additional fees to Plaintiffs and the Class related to the cancellation of their memberships;

- Whether Defendants engaged in deceptive and/or misleading consumer conduct towards Plaintiffs and the Class; and

- Whether Defendants' unlawful conduct towards Plaintiffs and the Class constitutes a violation of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA, NJCFA, RIUTPCPA, VCPA and MGL 93A.

739. These common questions of law and fact arise from the same course of events, and each Class member will make similar legal and factual arguments to prove liability.

740. Plaintiffs are members of the Class that they seek to represent.

741. Plaintiffs' claims are typical of the claims of the Class.

742. The relief Plaintiffs seek for the unlawful conduct complained of herein is also typical of the relief sought on behalf of the Class.

743. Plaintiffs' interests are co-extensive with those of the Class that they seek to represent.

744. Plaintiffs are willing and able to represent the Class fairly and to vigorously pursue their similar individual claims in this action.

745. Plaintiffs have retained counsel who are qualified and experienced in class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

746. Defendants have acted or refused to act on grounds generally applicable to the Class, making final injunctive and declaratory relief appropriate with respect to the Class.

747.	Injunctive and declaratory relief is a significant component of the relief sought by Plaintiffs on behalf of themselves and the Class.

748.	The common issues of fact and law affecting Plaintiffs' claims and those of the Class members, including the common issues identified above, predominate over any issues affecting only individual claims.

749.	The Class is so numerous that joinder of all members is impracticable.

### FIRST CLAIM FOR RELIEF
**(New York General Business Law §349)**
*On Behalf of Plaintiffs Jennifer Musarra, Celine D'Amore, David Almonte, Maureen Avione, Melissa Bauernfeind, Marcin Bielen, April Boddie, Rachel Brandoff, Alana Calmi, Lauren Culpepper, Karin Daubitz, Kycia Dias, Zachary Terry-Wade, Rachel Ellis, Brian Facchin, Daniella Smolanick, Cassie Farrelly, Ahmad Habib, Christina Hioureas, Merin Jacob, Anna Kozikowska, Nicole Kulisek, Marek Kulisek, Christopher Lemetre, Hatshepsut Pakeman-Symister, Lee Presser, Jessica Raimi, Diane Swick, Jenin Younes, Stephanie Wilson, Christian Zambrano and the Class*

750.	Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

751.	As alleged herein, Defendants have been engaged, and continue to engage, in consumer-oriented conduct towards Plaintiffs and the Class that was and continues to be false, misleading and deceptive in a material way.

752.	Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

753.	Defendants' conduct constitutes a willful violation of GBL §349.

## SECOND CLAIM FOR RELIEF
### (D.C. Consumer Protection Procedures Act §§28-3901, *et seq.*)
### *On Behalf of the Class*

754.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

755.    As alleged herein, Defendants have been engaged, and continue to engage, in consumer-oriented conduct towards Plaintiffs and the Class that was and continues to be false, misleading and deceptive in a material way.

756.    Additionally, Defendants have:  (i) stated a material fact which misled Plaintiffs and the Class and (ii) failed to supply Plaintiffs and the Class with copies of service contracts for them to execute.

757.    Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

758.    Defendants' conduct constitutes a willful violation of D.C. Consumer Protection Procedures Act §§28-3901, et seq.

## THIRD CLAIM FOR RELIEF
### (Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73 §201-1, *et seq.*)
### *On Behalf of Plaintiffs Alison Andrel, Elise Artelt, Jared Cohen, Andrew Forman, Gregory Golembeski,  Joseph Ott, Shannon Sysko and the Class*

759.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

760.    Plaintiffs and the Class purchased goods and/or services from Defendants primarily for their personal use.

761.     As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were, and continue to be, false, misleading and deceptive in a material way.

762.     Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

763.     Defendants' conduct constitutes a willful violation of Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73 §201-1, et seq.

**FOURTH CLAIM FOR RELIEF**
**(Connecticut Unfair Trade Practices Act, §42-110, *et seq.*)**
***On Behalf of Plaintiff Michael Lord and the Class***

764.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

765.     As alleged herein, Defendants have been engaged in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were misleading and deceptive in a material way.

766.     Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

767.     Defendants' conduct constitutes a willful violation of Connecticut Unfair Trade Practices Act, §42-110, et seq.

## FIFTH CLAIM FOR RELIEF
### (Maryland Consumer Protection Act, §13-101, *et seq.*)
### *On Behalf of the Class*

768.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

769.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

770.    Also as alleged herein, Defendants failed to state a material fact that deceived and continues to deceive Plaintiffs and the Class.

771.    Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

772.    Defendants' conduct constitutes a willful violation of Maryland Consumer Protection Act, §13-101, et seq.

## SIXTH CLAIM FOR RELIEF
### (New Jersey Consumer Fraud Act, §56:8-1, *et seq.*)
### *On Behalf of Plaintiffs Charles Lehnert, Nyman Aydin, Pamela Caffrey, Robert Goodman, Vaibhav Kajla, Wendy Schoeler and the Class*

773.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

774.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

775. Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

776. Defendants' conduct constitutes a willful violation of New Jersey Consumer Fraud Act, §56:8-1, et seq.

**SEVENTH CLAIM FOR RELIEF**
**(Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq.*)**
***On Behalf of the Class***

777. Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

778. As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

779. Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

780. Defendants' conduct constitutes a willful violation of Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, et seq.

**EIGHTH CLAIM FOR RELIEF**
**(Virginia Consumer Protection Act of 1977, §59.1-196, *et seq.*)**
***On Behalf of Plaintiff Erin Mackey Siraguse and the Class***

781. Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

782.	As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

783.	Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

784.	Defendants' conduct constitutes a willful violation of Virginia Consumer Protection Act of 1977, §59.1-196, et seq.

### NINTH CLAIM FOR RELIEF
**(Mass. Consumer Protection Act, M.G.L.A. c. 93A §§1 *et seq.*)**
***On Behalf of Plaintiffs  Katherine Irving, Christopher Leaman, Jacob Levin, Samilys Rodriguez,  Duygucan Sahin,  Joseph Singletary, Joseph Smith,  Alex Treves, Gretchen Treves, Emily Wickstrom and the Class***

785.	Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

786.	As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

787.	Plaintiffs and the Class suffered, and continue to suffer, damages as a result of the deceptive conduct alleged herein, including, but not limited to, being unlawfully charged fees in connection with the cancellation of their TSI memberships.

### TENTH CLAIM FOR RELIEF
**(Conversion)**
***On Behalf of the Class***

788.	Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

789.     As alleged herein, Defendants have interfered with Plaintiffs' and the Class's possessory right or interest in money by unlawfully charging and receiving payments in connection with the cancellation of the Plaintiffs' and the Class' TSI memberships.

790.     As a result of Defendants' conduct, Plaintiffs and the Class have suffered damages for which they are entitled to injunctive relief and damages to the greatest extent permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, respectfully requests that this Court:

A.     Declare that the practices complained of herein are unlawful;

B.     Enjoin Defendants from continuing to engage in unlawful practices;

C.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

D.     Designate Plaintiffs as representatives of the Class;

E.     Designate Plaintiffs' counsel as counsel of record for the Class;

F.     Determine the damages sustained by Plaintiffs and the Class as a result of Defendants' unlawful conduct, and award those damages against Defendants and in favor of Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed;

G.     Award Plaintiffs and the Class any applicable statutory damages;

H.     Award Plaintiffs and the Class any and all other applicable damages;

I.     Award Plaintiffs and the Class their reasonable attorneys' fees and costs; and

J.     Grant Plaintiffs and the Class such other and further relief that the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury on all

issues of fact and damages.

Dated: December 7, 2018
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By:     _____
      David E. Gottlieb
      Taylor J. Crabill

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dgottlieb@wigdorlaw.com
tcrabill@wigdorlaw.com

*Attorneys for Plaintiffs and*
*Proposed Class Counsel*